**Laverne SATEPEAHTAW, Appellant,**

**and**

**Vincent Bointy, Appellant,**

**v.**

**The STATE of Oklahoma, Appellee.**

**Nos. F–77–695, F–77–704.**

Court of Criminal Appeals of Oklahoma.

May 23, 1979.

Virgil L. Upchurch, Anadarko, for appellant Satepeahtaw.

George Miskovsky, Sr., and John Paul Johnson, Miskovsky, Sullivan & Miskovsky, Oklahoma City, for appellant Bointy.

Larry Derryberry, Atty. Gen., Bill J. Bruce, Asst. Atty. Gen., Clifford E. Briery, II, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Laverne Satepeahtaw, hereinafter referred to as defendant Satepeahtaw, and appellant Vincent Bointy, hereinafter referred to as defendant Bointy, were charged, jointly tried before a jury, and convicted in the District Court, Caddo County, Case No. CRF–75–172, for the offense of Embezzlement of State Funds, in violation of 21 O.S.1971, § 341. Punishment for each was set at ten (10) years' imprisonment and a fine of Five Hundred ($500.00) Dollars. Both defendants have perfected timely appeals to this Court, and for the sake of convenience, the two separate appeals are consolidated in this opinion.

The defendants' convictions arose from their activities with the Kiowa Housing Authority, a State agency created to provide Indian housing. From July, 1973, to February, 1975, several people connected with the Authority embezzled over $10,000.00 of State funds. Two trials followed, the present defendants having been granted a severance from two other defendants, one Carroll DeLaune, hereinafter referred to as Authority employee DeLaune, and one Dor-

othy DeLaune, hereinafter referred to as Executive Director DeLaune, who were also convicted. (For their appeal, see *DeLaune v. State*, Okl.Cr., 569 P.2d 463 [1977].)

During this period, defendant Bointy served on the Authority's Board of Directors. As chairman, his was one of two signatures, the other being that of Executive Director DeLaune, required on all disbursements of funds. The State introduced numerous checks bearing defendant Bointy's signature, and then proceeded to show their fraudulent nature. On some occasions, defendant Bointy paid himself money which was neither properly authorized by the Board nor due to him in any way. Other times, defendant Bointy paid third parties for work not performed or for more than the amount due. The State called Authority employee DeLaune who described some of these illicit transactions. On one typical occasion, the witness, as construction supervisor, was paid an "extra" one thousand dollars at the instigation of defendant Bointy. Half of this illegally obtained money he pocketed and half he "kicked back" to defendant Bointy.

Defendant Satepeahtaw, too, served as commissioner during the latter part of the period, but since the State was unable to prove wrongdoing during this time, his conviction depended upon his participation in the first year of the scheme when he was an independent contractor. In this capacity, defendant Satepeahtaw performed various jobs for the Authority, such as well drilling, fencing, and surveying. Sometimes he was paid legitimately; other times, he was not. Checks introduced by the State, coupled with the testimony of certain residents of the housing project, showed that he was paid for work not performed. In addition, defendant Satepeahtaw admitted on the stand, as well as earlier at a grand jury proceeding, excerpts of which were read at the trial, that he knowingly accepted false payment and then divided the money with Executive Director DeLaune.

Defendant Satepeahtaw raises two assignments of error. Defendant Bointy rais-

es four, two of which are identical to defendant Satepeahtaw's. The two common assignments of error are considered first.

Both defendants insist that they should not have been charged with Embezzlement of State Funds, pursuant to 21 O.S.1971, § 341, but rather with the offense of Filing False Claims pursuant to 21 O.S.1971, § 358, which carries a maximum penalty of two (2) years and/or a $10,000.00 fine.

Section 341 provides, in relevant part, that a public officer who appropriates to his own use, or the use of any person not entitled thereto, without authority of law, any money or thing of value received by him on behalf of this State shall be guilty of a felony.

Section 358, on the other hand, provides: "It shall be unlawful for any person, firm, corporation, association or agency to make, present, or cause to be presented to any employee or officer of the State of Oklahoma, or to any department or agency thereof, any false, fictitious or fraudulent claim for payment of public funds upon or against the State of Oklahoma, or any department or agency thereof, knowing such claim to be false, fictitious or fraudulent."

▆ The defendants base their contention on the rule of construction that a more specific and recent statute supersedes a general one when both are applicable. In defendant Bointy's case, it cannot even be said that both statutes are appropriate or applicable. When his wrongful conduct as commissioner is juxtaposed with the two statutes in question, it is readily apparent that a charge of Filing False Claims would not have covered the acts committed by him. Accordingly, we hold that defendant Bointy was properly charged with Embezzlement of State Funds.

In defendant Satepeahtaw's case, however, the issue is more complicated. Both statutes are applicable to his conduct. He obviously violated the false claims statute, and because he aided and abetted Executive Director DeLaune, a public officer, he was a principal to the crime of Embezzlement of

State Funds. The question now before us is whether Section 358, Filing False Claims, is a more "specific" statute, which supersedes the "general" Section 341, Embezzlement of State Funds.

Having examined many cases in which the rule of construction argued by defendant was applied, we hold that those cases are not analogous to the case before us. In the class of cases where the rule of construction controlled, a specific act, proscribed in a narrow statute, is necessarily included within the behavior proscribed by a broader statute. For example, one who commits the specific act of Injury to a Minor Child is necessarily guilty of Battery as well. In that case, the specific statute supersedes the general one because the narrow offense is included within the broad proscription. *Holder v. State*, Okl.Cr., 556 P.2d 1049 (1976). Similarly, one who commits Larceny From a Retailer necessarily violates the general Larceny statute, but should be prosecuted under the specific statute. *Jones v. State*, Okl.Cr., 507 P.2d 1267 (1973). The rule of construction was again applied where a defendant convicted of general Cruelty to Animals should have been charged with the specific offense of Instigating Fights Between Animals. *Maloney v. State*, Okl.Cr., 532 P.2d 78 (1975).

The two statutes involved in the present case do not exhibit this characteristic. One who commits the offense of Filing False Claims is not necessarily guilty of Embezzlement of State Funds which is aimed at public officers. If a person submitted a fraudulent claim to an innocent officer who paid it in good faith, there would be no violation of the embezzlement statute. In other words, filing false claims is not a "narrow" offense, once included within a broader proscription, but now made punishable separately as in the cases where the rule of construction controlled.

We observe, moreover, that this case is analogous to *Crutchfield v. State*, Okl.Cr., 553 P.2d 504 (1976), in which a prisoner who tore the sink from his cell was convicted of Injuring Public Buildings. This Court rejected his contention that he should have

been charged with the less serious offense of Injuries to Pipes. There, as in the instant case, the rule of construction would have been inappropriate, because one who injures pipes is not necessarily guilty of injuring a public building. There, as here, elements of two offenses happen to coincide, giving the false appearance that one was more "specific" than the other, when in fact they merely overlapped.

In conclusion, because we have held the rule of construction argued by defendant Satepeahtaw inapplicable to the case at bar, it follows that the prosecutor was free to elect which of two appropriate charges to bring pursuant to 21 O.S.1971, § 11, which provides that where an act is made punishable in different ways by different provisions of the criminal code, a violator may be punished under either. Therefore, no error occurred when the prosecutor chose to charge defendant Satepeahtaw with Embezzlement of State Funds under 21 O.S. 1971, § 341, notwithstanding the fact that he could have been charged with Filing False Claims under 21 O.S.1971, § 358.

In the second common assignment of error, both defendants contend that the prosecutor made two allegedly improper comments during closing argument.

Defendants first complain of the prosecutor's reference to the embezzled funds: "Where does this money come from? HUD is not a person who lives up in Oklahoma City. . . . This Kiowa Housing Authority was a State agency. . . . Where do they get their money to operate from?"

Over a sustained objection, the prosecutor continued: "I just ask you to use your common sense where it comes from." Later, he referred to the defendants as having "cheated" the people.

It is well settled that although prosecutors should not misstate the evidence, express personal opinions, use arguments calculated to inflame the jury, or inject issues broader than the guilt or innocence of the accused, they are permitted to comment upon the evidence and draw logical

inferences therefrom. *Hansboro v. State*, Okl.Cr., 530 P.2d 1038 (1975); *Ray v. State*, Okl.Cr., 510 P.2d 1395 (1973).

■ Defendants assert that the prosecutor's argument was inflammatory because he was implying that citizens, including the jurors themselves, were the ones hurt by the embezzlement. Although we frown upon the prosecutor's persevering in his line of attack after a sustained objection, we find the argument itself acceptable as a reasonable inference. The fact that the Authority was government-funded was in evidence. Obviously, taxpayers' money was involved.

■ The second comment which defendants contend was improper was the prosecutor's remark on the failure of the defendant's attorney to call certain witnesses. This practice is disapproved of and has resulted in modifications. See, *Baldwin v. State*, Okl.Cr., 519 P.2d 922 (1974), and *Thompson v. State*, Okl.Cr., 462 P.2d 299 (1969). The instant case, however, is distinguishable. In cases where modifications resulted, the comment on failure to produce witnesses was coupled with other seriously improper remarks, such as references to prior convictions. *Baldwin v. State*, supra, and *Thompson v. State*, supra. Moreover, the comments in those cases, unlike the one in the present case, were obviously prejudicial. In *Thompson* for instance, the prosecutor said, "[The uncalled witnesses'] absence is absolutely conclusive . . . that their testimony truthfully given would have damaged the defendant."

Finally, even if the prosecutor's remark was improper, it may be excused under the doctrine of invited error. In *Estes v. State*, Okl.Cr., 525 P.2d 1362 (1974), we held that a prosecutor's comment on defendant's failure to call witnesses was justified because the defense attorney had earlier commented on the State's failure to produce a witness. Likewise in the present case, defendants' counsel had insinuated that the State should have called certain witnesses and did not.

In conclusion, we hold that the prosecutor's closing argument was within the bounds of propriety laid down by this Court.

Defendant Bointy's first separate assignment of error asserts that admission into evidence of testimony given earlier by defendant Satepeahtaw to the grand jury constituted reversible error under *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). In *Bruton*, the United States Supreme Court held that admission in a joint trial of an extrajudicial confession of a co-defendant, *implicating the defendant*, constituted prejudicial error, even though the jury was properly instructed that the co-defendant's statements could be used only against him and not against defendant.

At the outset, we pause to observe that the State is incorrect in its assertion that *Bruton* does not apply because defendant Satepeahtaw took the stand. The holding in *Bruton*, it is true, was based on a denial of defendant's Sixth Amendment right to cross-examination. But had we found a *Bruton* violation in the present case, it would not have been eradicated by defendant Satepeahtaw's taking the stand, since both defendants were represented by the same attorney.

Defendant Bointy attacks two statements contained in the portion of defendant Satepeahtaw's grand jury testimony read at trial, equating them with the confession and implication in *Bruton*. First, defendant Satepeahtaw freely admitted to the grand jury that he accepted fraudulent payment, then kicked back, not to defendant Bointy, but to Executive Director DeLaune. This statement is self-incriminating, it implicates Executive Director DeLaune, but it in no way implicates defendant Bointy, since the State did not base its case on any collusion between defendant Bointy and Executive Director DeLaune. Second, defendant Satepeahtaw told the grand jury that he had visited defendant Bointy in the hospital and asked him to sign some bills which needed paying. This statement, though not incriminating on its face, could

possibly be considered somewhat incriminating when coupled with the fact that one of the admittedly fraudulent checks, made out to defendant Satepeahtaw, was signed on a date which fell within defendant Bointy's stay in the hospital.

We find, however, that we need not resolve the issue of whether defendant Satepeahtaw's statements implicated defendant Bointy, because even if they were incriminating, admission of the statements was harmless within the meaning of 20 O.S.1971, § 3001. In *Schneble v. Florida*, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972), the United States Supreme Court, ruling on a *Bruton* issue, held that unless there is a reasonable possibility that the evidence contributed to the conviction, reversal is not required. We discover no such possibility in the instant case. It is apparent that the State introduced the testimony as part of its case against defendant Satepeahtaw. Any reference to his co-defendant, Bointy, far from being determinative as to the latter's guilt, was merely incidental. Because other evidence introduced against defendant Bointy, including the strong documentary evidence and the testimony of Authority employee DeLaune, was ample to support his conviction, we hold that defendant Bointy was not prejudiced by the admission of defendant Satepeahtaw's statements before the grand jury. See *Jenkins v. State*, Okl.Cr., 508 P.2d 660 (1973).

In the final assignment of error, defendant Bointy contends that the punishment imposed was excessive, insisting that it was based on prejudice resulting from the prosecutor's remark and his choice to prosecute under the "wrong" statute. Since we have already determined that neither of these occurrences constituted error, we are left with the general test employed in this jurisdiction that only when a sentence is so excessive as to shock the conscience of this Court can it be modified on this ground. *Willis v. State*, Okl.Cr., 564 P.2d 652 (1977). In light of all the facts and circumstances of the present case, we cannot say that a sentence of ten years and a Five Hundred Dollar fine shocks our conscience, especially

since 20 years could have been imposed pursuant to 21 O.S.1971, § 341.

For the above and foregoing reasons, the convictions and sentences of both defendant Satepeahtaw and defendant Bointy are

*AFFIRMED.*

CORNISH, P. J., dissents.

BRETT, J., concurs.