Danny Ray CAMPBELL, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–79–428.

Court of Criminal Appeals of Oklahoma.

Nov. 3, 1981.

T. Hurley Jordan, Public Defender, Demetri Anastasiadis, Robert A. Ravitz, Asst. Public Defenders, Oklahoma City, for appellant.

Jan Eric Cartwright, Atty. Gen., Reta M. Strubhar, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

CORNISH, Judge:

The appellant was convicted of Murder in the First Degree in Oklahoma County District Court. The jury assessed punishment at life imprisonment.

The homicide arose out of a domestic dispute. The appellant, Danny Ray Campbell, and his wife had been having marital problems. June 21, 1978, was no different; the appellant and his wife, Pam, had a heated argument over his drinking problem. He became enraged and threatened his wife with physical harm.

Frightened by her husband's threats, Mrs. Campbell asked her neighbor, Mrs. Green, if she could stay at her place for a few days. Mrs. Green consented. Also living with Mrs. Green were Peggy and Alfred Cooks.

In the early morning hours of June 24, 1978, the appellant arrived at the Green's residence demanding to see his wife. Alfred Cooks told him to come back later because everyone was still asleep. The appellant argued with Mr. Cooks for a while and then left. He returned approximately four hours later at around 8:30 a. m. He again demanded to see his wife. This time, however, Alfred Cooks woke up Pam Campbell. She talked with her husband through a living room window for about an hour, but refused to open the door. While they

were talking, the appellant's mother and younger brother arrived. His mother finally convinced Pam Campbell to open the door.

The appellant then rushed into the trailer and started toward Alfred Cooks. Danny Ray Campbell stated that he did not want Mr. Cooks to interfere in his family affairs anymore. During the scuffle that ensued, the appellant mortally slit Alfred Cooks' throat with a straight razor.

In the first five propositions, we will address the errors alleged to have occurred during Campbell's sanity trial. The remaining propositions deal with his subsequent murder trial.

## I

The first contention is that the trial court erroneously overruled the appellant's motion *in limine*. The motion *in limine* requested that during the sanity trial no reference be made to the murder charge. The purpose of the competency trial is to determine whether a defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, and whether he has a rational, as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960).

The appellant asserts that the murder charge is wholly irrelevant to the issue of his competency to stand trial. We disagree. The jury is charged with the responsibility to determine whether the defendant can effectively assist counsel in his defense and appreciate the nature of the charges against him. *See*, 22 O.S.Supp.1980, §§ 1175.1–1175.8. We hold that the jury's knowledge of the charge is essential to enable them to determine whether the appellant has the present mental capacity to appreciate the nature of the charges, i. e., first degree murder. The trial court properly overruled the appellant's motion *in limine*.

It is further alleged that the trial court erred in admitting evidence of Campbell's ability to distinguish between right and wrong. In *Baker v. State*, 433 P.2d 525 (Okl.Cr.1967), this Court stated that:

'The inquiry to be submitted to a jury in a proceeding under statute for a determination as to defendant's sanity, is whether the defendant is mentally competent to make a rational defense, and not whether the defendant is able to distinguish between right and wrong.' 433 P.2d at 527–28; (quoting *Bingham v. State*, 82 Okl.Cr. 5, 165 P.2d 646 (1946)); 22 O.S.1971, § 1162.

It would be error for a trial court to find the defendant competent to stand trial based solely upon the determination that he knew right from wrong. *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). The ability to appreciate the difference between right and wrong is not in itself determinative on the issue of the defendant's present competency to stand trial.

However, this is not to say that evidence of the defendant's present ability to distinguish between right and wrong is totally irrelevant to the competency proceeding. On the contrary, we hold that evidence of a defendant's knowledge of right and wrong is relevant to the determination of a defendant's present competence to appreciate the nature of the charges and to assist counsel in the preparation of this defense.

It is next alleged that the trial court erred in allowing the prosecutor, during cross-examination, to refer to a document which had not been introduced into evidence. The document in question was the appellant's medical reports from Central State Hospital. The appellant's assertion that reference to the medical report by the State deprived him of his right to confront the witness against him is untenable. The Oklahoma Evidence Code provides that "cross-examination shall be limited to the subject matter of the direct examination and matters affecting the credibility of the witness." 12 O.S.Supp.1980, § 2611(C).

**356** ■ ▬▬▬▬▬▬

■ The trial court should allow cross-examination into matters which tend to explain, contradict, or discredit any testimony given by the witness or which tests his accuracy, memory, veracity or credibility. *Lewis v. State*, 458 P.2d 309 (Okl.Cr.1969). In this case, the medical report was used to cross-examine a defense medical witness, as to the extent of his knowledge of the appellant's medical history. We find that the use of the medical report was proper for impeachment purposes. We conclude that the appellant was not deprived of his constitutional right to confront witnesses against him, since the trial court ruled that the substantive contents of the medical report were not to be disclosed and limited its use to impeachment of the witness.

■ This Court is also asked to determine whether the trial court erred in permitting two police officers to testify about their observations of the appellant six (6) months before the competency trial. We note that competency to stand trial is not solely a medical concept. Testimony from lay persons who have observed the defendant's behavior and communicative abilities is proper, provided that the observations of the defendant are reasonably proximate in time to the sanity trial. In this case, we uphold the trial court's ruling that the testimony pertaining to the appellant's conduct six (6) months prior to the trial was not too remote.

■ The final assertion of error in the sanity trial is that a mistrial should have been granted due to an improper question propounded by the prosecutor. The alleged error occurred during the cross-examination of Jim Pearson, a public defender, who had represented the appellant in a previous felony case. The prosecutor questioned:

Q. Are you aware of any murder—first degree murder case which was handled by the Public Defender's Office where issues of sanity were not raised?

MR. RAVITZ: Objection, Judge.

THE COURT: Sustained.

We find that the trial court properly overruled the motion for a mistrial. The record reveals that the objection to the question was quickly sustained by the judge. Additionally, the question was only asked once and was not answered by the witness. We conclude that the appellant was not prejudiced as to merit a mistrial, since the error was cured at the trial level. *See, Jones v. State*, 554 P.2d 1207 (Okl.Cr. 1976).

**II**

We now turn our attention to the errors alleged to have occurred during the appellant's trial for Murder in the First Degree. This Court is first asked to determine whether the trial court properly overruled the appellant's motion *in limine* to exclude any evidence of his prior conviction. The appellant, a year earlier, was convicted of assault and battery with a deadly weapon on his wife.

He argues that evidence of this prior conviction was collateral, immaterial and its probative value was outweighed by its prejudicial effect. Title 12, § 2609, of the Oklahoma Statutes provides that;

A. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime:

1. Involved dishonesty or false statement regardless of the punishment; or

2. Was punishable by death or imprisonment in excess of one (1) year, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the detriment of the defendant.

■ Evidence of a prior felony conviction is admissible to impeach a defendant's credibility once he testifies. The trial court is given wide latitude in determining the probative value of the prior conviction weighed against its prejudicial effect. The prior conviction, in this case, was relevant as to the credibility of the appellant's self-defense theory. Therefore, we hold that the trial court did not abuse its discretion by overruling the motion *in limine*. *See, Morris v. State*, 607 P.2d 1187 (Okl.Cr.1980).

The next contention is that the trial court should not have allowed the State to introduce several photographs of the victim. The photographs in question were in black and white and showed the victim lying on the floor with the side of his face slashed and his throat cut.

 Photographs are admissible when relevant to the facts in issue provided that their probative value outweighs the prejudicial effect. *Sykes v. State*, 572 P.2d 247 (Okl.Cr.1977). The introduction of the photographs is vested in the sound discretion of the trial judge. *Holloway v. State*, 602 P.2d 218 (Okl.Cr.1979). The photographs at bar accurately depict the murder scene and condition of the victim, which substantially corroborates the testimony of the State's witnesses. We also find that the photographs were not introduced solely to inflame and prejudice the jury. The trial court did not abuse is discretion. *See also, Johnson v. State*, 597 P.2d 340 (Okl.Cr. 1979).

 The appellant further asserts that two comments made by the prosecution were so prejudicial as to require a reversal of his conviction. The record establishes that both statements by the prosecutor were directed to the trial judge and were spoken in a low voice at the bench. The trial judge ruled in each instance that the comments did not necessitate a mistrial. A thorough examination of the record reveals that the comments did not deprive the appellant of a fair trial. *See, Samples v. State*, 337 P.2d 756 (Okl.Cr.1959). This Court will not reverse a conviction unless we find that the remarks were so prejudicial as to have affected the jury's verdict.

The final allegation advanced is that the jury instructions unconstitutionally shifted the burden of proof to the appellant to mitigate the homicide from first degree murder to first degree manslaughter. The appellant in support of this contention cites *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); and *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). The United States Supreme Court held in *Mullaney, supra*, that the State is required to prove malice aforethought beyond a reasonable doubt; it cannot rely on a presumption of implied malice, which requires the defendant to prove he acted in a heat of passion upon sudden provocation. The State must prove an absence of heat of passion beyond a reasonable doubt.

 Instructions given to the jury are left to the sound discretion of the trial court. This Court cannot reverse a jury conviction where the instructions viewed as a whole, fairly and accurately state the applicable law in conformity with constitutional mandates. *Green v. State*, 611 P.2d 262 (Okl.Cr.1980). After a careful review of the instructions given in this case, we find them to be constitutionally sound. The instructions[1] unquestionably instruct the

1. The instructions provided in pertinent part:

No. __3__

To this charge the defendant has entered a plea of not guilty, which casts on the State the burden of proving the material allegations of the information to your satisfaction beyond a reasonable doubt before you would be justified in returning a verdict of guilty.

. . . .

The defendant is presumed to be innocent of the crime charged against him, and innocent of each and every material element constituting such offense, and this presumption of innocence continues until such time as his guilt is shown to your satisfaction beyond a reasonable doubt, and if, upon a consideration of all the evidence, facts and circumstances in the case you entertain a reasonable doubt of the guilt of the defendant of the crime charged against him, you must give him the benefit of that doubt and return a verdict of not guilty.

No. __5__

You are instructed that the Statutes of this State provide:

'A person commits Murder in the First Degree when he unlawfully and with malice aforethought causes the death of another human being.'

Malice in its legal sense is not necessarily ill will or hatred. 'Malice', as that term is used in this statute, is a deliberate intention, a premeditated design to take away the life of a human being which is manifested by external circumstances capable of proof. Malice aforethought may be formed at any time before the unlawful act and may be proven by either direct or circumstantial evidence and

jury that the State has the burden to prove malice aforethought beyond a reasonable doubt.

The court did not instruct the jury expressly that the State had to prove absence of heat of passion. However, the clear import of the instructions requires the State to prove absence of heat of passion. The instructions provide that the State must prove malice beyond a reasonable doubt, and go on to instruct that malice and heat of passion cannot co-exist.

■■■ In conclusion, the appellant states that instruction number thirteen (13) is in direct contravention of *Sandstrom v. Montana, supra*. In *Sandstrom*, the Supreme Court held unconstitutional an instruction which provided "the law presumes that a person intends the ordinary consequences of his voluntary acts." The Supreme Court asserted that this instruction *standing alone* could be interpreted by the jury as creating a mandatory presumption. The instruction at bar limits this presumption of intent by stating that "[y]our minds must be satisfied beyond a reasonable doubt that the accused had such felonious intent at the time of the alleged cutting." Thus, merely creating a permissive inference, not mandating the jury to draw conclusions from the defend-

ant's acts. When read as a whole the instructions require the State to prove each element of the crime beyond a reasonable doubt. The instructions make it clear that malice aforethought was an element for the State to prove beyond a reasonable doubt in order for the jury to find the appellant guilty of Murder in the First Degree.

The judgment and sentence is AFFIRMED.

BRETT, P. J., concurs in results.

BUSSEY, J., concurs.

from the circumstances which accompany and characterize the act itself.

The *question of deliberate intention is a question of fact* to be *determined by the jury from all of the evidence like every other material fact in the case.* The law does not require that deliberate intention be proved only by direct and positive testimony. The existence of a deliberate intention, as well as its formation, are operations of the mind, as to which direct and positive testimony cannot always be obtained; therefore, the law recognizes that it may be proved by circumstantial evidence. It will be sufficient proof of such deliberate intention if the circumstances attending the homicide and the conduct of the accused convince you beyond a reasonable doubt of the existence of such deliberate intention at the time of the homicide.

The absence of 'malice' as that term is used within these instructions, is essential for the homicide to constitute first degree manslaughter, and requires that the defendant not have killed with a previously formed or

deliberate purpose in premeditation. *Malice and heat of passion cannot co-exist.* The distinction between murder and voluntary manslaughter is found in the dividing line between malicious action on the one hand and action in the heat of passion on the other

You are instructed that the intent with which an act is done is the mental state of mind of the accused. Your minds must be satisfied beyond a reasonable doubt that the accused had such felonious intent at the time of the alleged cutting. Direct and positive proof of intent is not necessary, but if you find that an act was done, the intent with which it was done is to be gathered and determined by you from all the facts and circumstances as the same have been established and shown by all the evidence adduced upon the trial of this case. The law presumes that every person who has reached the age of discretion is accountable for all of his acts, and the law also presumes that every sane person contemplates and intends the necessary and natural consequences of his own acts.