**Ben Faron CURLISS, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–83–485.**

Court of Criminal Appeals of Oklahoma.

Nov. 30, 1984.

---

Earl R. Donaldson, Oklahoma City, for appellant.

Michael C. Turpen, Atty. Gen., Susan Brimer Agosta, Asst. Atty. Gen., Oklahoma City, for appellee.

OPINION

BUSSEY, Presiding Judge:

Ben Faron Curliss was charged, tried and convicted for First Degree Murder, in Oklahoma County District Court, Case No. CRF–81–4649, wherein, the death penalty was sought. He was sentenced to life imprisonment and on appeal raises five assignments of error. For a full recital of the facts, see *Kelley v. State*, 692 P.2d 563 (Okl.Cr.1984) and *Vining v. State*, 675 P.2d 469 (Okl.Cr.1984). It suffices to say that strong circumstantial evidence established that the appellant participated with Kelley and Vining in the brutal stabbing death of Bobby Gene Lykins, a cocaine dealer, while he lay sleeping in his Oklahoma City home in the early morning hours of October 14, 1981.

I

Defendant initially argues that his waiver of his right to counsel was involuntary because it was coerced by the police and Assistant District Attorney. His contention that he was offered a chance to speak with his wife but only after giving a statement to police fails to square with the facts. The testimony established that the appellant asked to see his wife *after* he gave a statement and that he initiated the meeting with police through his wife, with whom he had visited prior to making a statement.

As this Court has held, the appropriate test for the admissibility of a statement is not whether the defendant was distressed at the time it was made, but whether he is nevertheless capable of understanding the meaning and effect of his statement. *Seth v. State*, 647 P.2d 452 (Okl.Cr.1982). We are of the opinion that the trial court had sufficient evidence at an in-camera hearing from which to conclude that the appellant's statement was made voluntarily.

The appellant next argues that he was denied assistance of counsel at a stage in the proceedings where he was clearly entitled to the assistance of a lawyer.

While we agree that the *right* to counsel had attached because formal criminal proceedings had been instituted, *Hays v. State*, 617 P.2d 223, 230 (Okl.Cr.1980), the uncontroverted evidence at an in-camera hearing affirmatively demonstrates that the appellant waived his right to counsel before giving a statement to police:

Q. [PROSECUTOR] Okay, prior to interviewing Mr. Curliss was he advised of his Constitutional Rights?

A. [HOMICIDE INVESTIGATOR WINBORN] yes, sir, he was.

\* \* \* \* \* \*

Q. Did he indicate he understood his rights?

A. Yes, sir, he did.

Q. Let me ask you, had any specific comment been made by anyone, as far as calling a public defender for him?

A. Yes, sir.

Q. Who made that comment?

A. You did, sir.

Q. What was the comment?

A. You asked Mr. Curliss if he had an attorney. He said no. You then asked him, we can produce a public defender for you right now if you need one. He said no, I don't need one. I just want to get this cleared up.

Q. And did he then proceed to make a statement?

A. Yes. (Tr. 129–130).

We decline to accept appellant's underlying premise that counsel should have automatically been present at the questioning even if the appellant had declined the State's offer to produce counsel for him. Accordingly, this assignment of error is without merit.

II

In his second assignment of error, the appellant contends that statements obtained from him following a warrantless illegal arrest should have been suppressed. He reasons that information from a citizen informant to police was not sufficient probable cause for his arrest. However, this issue is improperly before this Court be-

cause appellant failed to argue the propriety of his arrest at trial and failed to object to the admission of his statement on such grounds, thereby waiving the alleged error. *Coleman v. State,* 668 P.2d 1126 (Okl.Cr. 1983); *Hill v. State,* 568 P.2d 635 (Okl.Cr. 1977). See also, *Ferguson v. State,* 645 P.2d 1021 (Okl.Cr.1982).

### III

■ In his third assignment of error, the appellant argues that absent his statements to police, the evidence was insufficient to form a prima facie case. We have previously concluded that the appellant's statements were admissible and would additionally observe the testimony of Allen Gaddy that the appellant told him, "we wasted him," and Kim Gaddy's testimony that the appellant asked the Gaddys to alibi for him and say that they spent the night in question with him. In sum, the evidence presented at trial sufficiently established a prima facie case. See, *Renfro v. State,* 607 P.2d 703 (Okl.Cr.1980).

### IV

■ Next, the appellant cites numerous examples of alleged prosecutorial misconduct in his cross-examination and closing argument. Initially, we note the appellant's failure to voice a contemporaneous objection to any of the prosecutor's comments save one, which was sustained. Therefore, his complaints have been waived. *Ellis v. State,* 652 P.2d 770 (Okl. Cr.1982). We have reviewed the entirety of the closing arguments and find that while some of the prosecutor's remarks were unnecessary and not to be condoned, most were reasonable inferences on the evidence. *Ellis,* supra at 772. In view of the strong circumstantial evidence of the appellant's guilt, we cannot say that the remarks appeared to have swayed the jury's verdict. *Campbell v. State,* 636 P.2d 352 (Okl.Cr.1981), cert. denied, 460 U.S. 1011, 103 S.Ct. 1250, 75 L.Ed.2d 479 (1983). This Court finds specifically objectionable, though, the following prosecutorial remark:

We all know the profile of a hired killer. I guess that is more Dick Tracy and television stuff, and not this reality. I don't know the profile of a hired killer. These gentlement don't know the profile. It's not like they're stamped in a mold. You can't tell what every hired killer looks like. But if you look across the room right now you can see what one of them looks like. (Tr. 491).

However, it is clear that defense counsel initially injected "Dick Tracy" into closing argument and then submitted:

Does he [the defendant] look to you like that is the profile of a killer? ... But it takes a special kind of person to kill on an order.... There are probably more than there should be, but we all know what kind of a profile that type of man has, in general.

We know that that type of a man is cold, cruel, calculated person. (Tr. 484).

■ Where the prosecutor's remarks are initially invited by defense counsel, they will generally not be grounds for reversal. *Wacoche v. State,* 644 P.2d 568 (Okl.Cr. 1982). See also, *Satepeahtaw v. State,* 595 P.2d 805 (Okl.Cr.1979); *Brown v. State,* 563 P.2d 1182 (Okl.Cr.1977). This assignment of error is without merit.

### V

■ Appellant argues ineffective assistance of counsel in his final assignment of error. In *Johnson v. State,* 620 P.2d 1311 (Okl.Cr.1980), we adopted the view that defense counsel must exercise the skill, judgment and diligence of a reasonably competent defense counsel. We have reviewed the numerous examples of alleged ineffective assistance of counsel and conclude that the appellant suffered no prejudice in view of the strong evidence of guilt. *Johnson,* supra at 1314.

While appellant's alibi defense was far from perfect, it had the potential to raise a reasonable doubt in the jurors' minds, particularly when the State had no direct evidence that he stabbed the deceased. As stated in *Johnson,* supra at 1313, an appel-

late court should not, with perfect hindsight, attempt to second guess trial strategy which was viable.

As to defense counsel's failure to argue for suppression of the appellant's statements, it should be noted that in it, the appellant consistently denied his involvement in the murder. This too, could have been viable strategy as could his decision not to object to the admission of the statement because he may have thought it was given voluntarily and knowingly.

Finally, we observe the particularly persuasive closing argument of defense counsel at the second stage of this capital case, wherein the appellant was spared the death penalty and given the minimum sentence for First Degree Murder.

This assignment of error is without merit.

Having found no errors requiring modification or reversal, the judgment and sentence is hereby AFFIRMED.

BRETT, J., concurs.

PARKS, J., Specially Concurs.

PARKS, Judge, specially concurring:

I concur in the results of this decision; however I feel it also necessary to note my objection to the prosecutor's comment quoted in Judge Bussey's Opinion. Even though the comments were invited by defense counsel, the prosecutor strayed close to prejudicial comments and reversible error.

It is clear that there was strong circumstantial evidence against the defendant, and it is not apparent that there was any prejudicial effect that swayed the jury's verdict.