Scotty Lee MOORE, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–84–760.

Court of Criminal Appeals of Oklahoma.

April 15, 1987.

Rehearing Denied May 15, 1987.

---

Pete Gelvin, Asst. Public Defender, Oklahoma City, for appellant.

Michael C. Turpen, Atty. Gen., Susan Stewart Dickerson, Asst. Atty. Gen., Oklahoma City, for appellee.

**OPINION**

BUSSEY, Judge:

Scotty Lee Moore was convicted in the District Court of Oklahoma County of Murder in the First Degree. Punishment was assessed at death as the jury recommended to the trial court.

Moore was found guilty of killing Alex Fernandez, a desk clerk at a motel in Oklahoma City who had fired appellant from working at the motel a month prior to the homicide. At the time of the killings, Vicki Caster, appellant's cousin and girlfriend, was in his company. She offered incriminating evidence against appellant after having been granted immunity.

She stated that they entered the motel where Fernandez worked in the late evening of November 17, or early morning of November 18, 1983, for the purpose of robbing it. Appellant took a loaded .22 caliber rifle into the motel which he had stolen during a burglary in Dodge City, Kansas. Caster gathered up the cash at the motel desk while appellant took Fernandez to a back room. Contrary to appellant's promise to Caster, he used the weapon against Fernandez by shooting him five times in the head as the victim lay face down on the floor. Appellant later described with intrigue the appearance of balls of blood as the shots entered Fernandez's head.

Fernandez's body was not discovered until 7:00 a.m. the morning of November 18, 1983. The rifle appellant used to kill Fernandez was later recovered from appellant's brother-in-law to whom Moore had given the gun for safekeeping for his nephew.

**I**

■ Appellant first assigns as error the introduction into evidence of two 8″ x 10″ photographs which depict the victim face down on the floor shot in the head with blood splatterings in the surrounding areas. He claims their prejudicial value outweighed probative content, that the points they proved could have been stipulated by the parties, and that smaller, less damag-

ing photographs were available but not used.

This Court has consistently upheld the admission of photographs which depict the wounds of a homicide victim. In *Thompson v. State*, 711 P.2d 936 (Okl.Cr.1985), we noted that admission of photographs lies within the trial court's discretion whose decision is to be disturbed only upon abuse of that discretion. If such evidence is gruesome *and* the probative value is substantially outweighed by its prejudicial effect, only then will an abuse be found. *Id.*

Corroboration of the medical examiner's testimony as to cause of death, which was supplied by the pictures herein, gives probative value to photographs. Furthermore, the pictures in the present case corroborated Caster's testimony as to how and where Fernandez was killed. The 8″ x 10″ photographs better presented the wounds than the 5″ x 7″ ones did, and their use was justified. The photographs were not unnecessarily gruesome and their admission was not an abuse of discretion.

## II

■ Appellant requested prior to trial funds to hire a ballistics expert in order to cast doubt on the testimony of the State's ballistics expert. The State's expert compared the projectiles which wounded the victim with the rifle retrieved from appellant's brother-in-law's possession and testified he believed the projectiles were consistent with having been fired by this particular gun. The expert could not make a conclusive statement. Appellant contends the trial court violated 22 O.S.Supp.1986, § 464(B), in not granting his motion for the funds in order that he might be able to refute what he characterizes as "the strongest evidence tending to corroborate Caster."

Appellant's defense at trial was that he was not involved in the robbery/murder and that Caster may have been the perpetrator. (This was his own description of his defense as stated in Appellant's Brief). The ballistics evidence was not antagonistic to his defense, nor did appellant establish prior to trial that the "expert witness is

necessary to prepare the defense." 22 O.S. Supp.1986, § 464(B).

In *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), the United States Supreme Court required an indigent to show that his insanity defense would be a significant factor at trial before the State was required to provide funds for access to psychiatric assistance in preparing for trial. We held in *Plunkett v. State*, 719 P.2d 834 (Okl.Cr.1986), that when scientific evidence is the subject of the expert's testimony, the danger of an inaccurate resolution of the evidentiary issues is not necessarily present, and funds for a second expert is not usually warranted.

In the present case, the expert presented the bases for his opinions and was aboveboard in expressing the inconclusiveness of his findings. His testimony was neutral in nature and easily understood. Due to appellant's failure to establish the necessity to his defense of the expert's assistance prior to trial, its lack of significance to his defense, and the neutral, scientific nature of the evidence, the necessity of an expert's assistance was not present.

## III

■ In *Enmund v. Florida*, 458 U.S. 782, 797, 102 S.Ct. 3368, 3376, 73 L.Ed.2d 1140 (1982), the United States Supreme Court held that the Eighth Amendment forbids the imposition of the death penalty against one who "aids and abets a felony in the course of which a murder is committed by others but who does not himself kill, attempt to kill, or intend that a killing take place or that lethal force be used." The jury in this case had a choice of finding appellant guilty of malice aforethought, or of felony murder. They found appellant guilty of felony murder. He now contends that since the jury rejected a finding of malice aforethought murder, his culpability was not proven to be great enough to allow imposition of the death penalty under *Enmund*. He cites *Cabana v. Bullock*, 474 U.S. 376, 106 S.Ct. 689, 88 L.Ed.2d 704 (1986), in which the Supreme Court condemned jury instructions which would allow a conviction of capital murder regard-

less of intent, and based solely upon the defendant having aided his accomplice at some point in an assault which led to the killing.

Appellant's contentions fly in the face of the sentencing instructions. The jury was advised:

In this case, the State has the burden of proving beyond a reasonable doubt that the Defendant, Scotty Lee Moore, either participated in the planning of the killing of Alex Fernandez or actually fired the shots into the body of Alex Fernandez resulting in his death, before you may consider the imposition of the death penalty.

If you do not so find or should you entertain a reasonable doubt thereof, then in either of said latter events, the sentence must be imprisonment for life.

This instruction held the jury to an even stricter standard than *Enmund* requires since they were to find beyond a reasonable doubt that he planned the killing or killed before the death penalty could be considered. There was a great deal of direct and circumstantial evidence from which the jury could have found, and in fact did find, this level of culpability.

## IV

■ Appellant summarily presented prior to trial a motion to quash the jury panel from which his petit jury was drawn. He asserted then and now on appeal that he was denied a jury representative of a fair cross-section of the community in violation of the Sixth and Fourteenth Amendments. His claim is that individuals seventy years of age and older are systematically excluded because 38 O.S.1981, § 28(A) provides that they may not be compelled to serve as jurors. Trial counsel did not support his motion with statistical evidence, but only suggested that people seventy years of age or older probably constituted six percent of the population. He also offered a stipulation entered into with the State that several individuals had been excused from serving on the basis of age.

In *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), the Su-preme Court articulated the constitutional principle that criminal defendants are entitled to juries drawn from a fair cross-section of the community. When underrepresentation of venires of distinctive groups in the community is due to their systematic exclusion, a defendant's Sixth Amendment rights are infringed. In *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979), the Court delineated the elements a defendant must show to establish a prima facie violation of the fair-cross-section requirement as:

(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to the systematic exclusion of the group in the jury selection process.

*Id.* at 364, 99 S.Ct. at 668, 58 L.Ed.2d at 587. Appellant fails to establish any of the elements listed above.

In both *Taylor* and *Duren*, the defendants established that the underrepresented group, which was women, was sufficiently numerous and distinct that if they were eliminated from jury panels, the fair-cross-section requirement could not be satisfied. This has not been demonstrated herein.

Appellant's trial counsel guessed that the group he said was underrepresented constituted six percent of the community. The State has presented 1980 census data showing that 10.45 percent of Oklahoma County's population consisted of individuals sixty-five years of age and older. Those who may be exempted from jury service due to age would be an even smaller percentage since the above figure would be further reduced by subtracting 1) those persons sixty-five to seventy years of age, 2) those not registered to vote, and 3) those who fall within another exemption. Thus, appellant did not make the first showing.

Appellant did not make the second showing that the actual representation of this group was not fair or reasonable. He did not make any showing as to percentage

represented by this group. A stipulation was offered showing several people were allowed to take this exemption.

Therefore, appellant has not made the proper showings to establish a prima facie violation of the fair-cross-section requirement. This assignment is without merit.

### V

Prior to trial, appellant requested of the trial court funds to enable his attorney to go to Texas and interview two inmates as potential witnesses and also requested that the court compel their presence at trial. Trial counsel traveled to Texas at his own expense and interviewed these individuals. Affidavits were filed which provided the substance of the testimony they would have offered at trial. All of their testimony concerned instances of prior unrelated violence and other unlawful conduct by Vicki Caster.

Appellant categorizes these witnesses' testimony as impeaching of Caster's credibility and as mitigating toward his own culpability. But we find it to be neither and that the trial court did not err in denying his motions.

■ The testimony did not concern Caster's character for truthfulness and its admission is prohibited by 12 O.S.1981, § 2608(B). This section of the Evidence Code provides that specific instances of conduct of a witness may not be proved by extrinsic evidence unless it concerns the individual's character for truthfulness. The affidavits of the two inmates' statements concerned violence, drugs, and prostitution.

■ Moreover, their testimony would not have been allowed in the sentencing stage as mitigating evidence. The rules of evidence continue to apply even at this stage. Though the scope of evidence which may be presented is much greater at sentencing in a first degree murder case, and evidence of mitigating factors concerning the character and record of an individual offender is essential, *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), this does not include evidence of another's character and allow neglect of evidentiary rules. *See also Eddings v. Oklahoma*, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) and *Woodson v. North Carolina*, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976).

■ The "Uniform Act to Secure the Attendance of Witnesses from Without the State in Criminal Proceedings," is codified at 22 O.S.1981, §§ 721–27. It allows out-of-state process for material witnesses. The trial judge held that the two in question were not material. There was no error.

### VI

During the sentencing stage of trial, an assistant district attorney first gave a closing statement for the State. Appellant and his counsel then waived the opportunity to make a closing statement. The trial court advised appellant and his counsel that he had discretion to allow the State to make a second closing statement and again inquired if appellant continued in waiving closing argument. Appellant stated that he wished to follow his counsel's advice and waive closing argument. The State presented further closing argument by the district attorney. Appellant's counsel then asked to have the opportunity to make a closing statement, which the trial court denied.

Appellant alleges that a number of errors occurred during this scenario, but we disagree with his contentions. He first assigns as error the trial court's action of allowing the State to make a second argument after he had waived his right to do so. But as was discussed at trial in camera, this Court has held that the trial judge has discretion to allow the State to make a second argument when a defendant waives argument. *Brewer v. State*, 44 Okl.Cr. 361, 280 P. 473 (1929) (cited in *Moore v. State*, 461 P.2d 1017 (Okl.Cr.1969)).

■ Section 831(6), Title 22 O.S.1981. provides that a jury trial *"must* proceed in the following order:

. . . .

6. Thereupon, unless the case is submitted to the jury without argument, the

counsel for the State must commence, and the defendant or his counsel shall follow, then the counsel for the state shall conclude the argument to the jury...." (Emphasis added). The defendant, by waiving closing argument, cannot foreclose the State's final argument. Defendant must show an abuse of discretion and injury before relief would be warranted. *Brewer,* supra, at 474, 280 P. 473. Appellant has not made these showings.

 He further urges that he should have been allowed another chance to give closing statements. Section 831(6) of Title 22 O.S.1981, does not grant a defendant two opportunities for closing argument. He made a knowing waiver of his argument after the judge said he might allow the State to make a second argument. He offers no authority for such a trial procedure and he does not establish a reason that his waiver would be invalid. A defendant in a capital case may even waive trial and enter a plea of guilty. But he is not allowed to rescind his waiver on whim. *Pierce v. State,* 394 P.2d 241 (Okl.Cr.1964). There is no error.

Appellant further complains that the trial court erred in allowing, over the defense's objection, improper comments as well as redundant comments by the district attorney during closing argument. However, redundancy itself is not necessarily objectionable.

The comment he contends is improper in spite of the wide latitude of argumentation of counsel afforded by this Court, *Langdell v. State,* 657 P.2d 162 (Okl.Cr.1982), is as follows:

> Citizenship in this society doesn't come free. Some of us went to World War II; some of us went to Korea; some of us went to Viet Nam—
>
> MR. RAVITZ: Objection.
>
> THE COURT: Overruled.
>
> (BY MR. MACY): —all as a part of the price of citizenship that we have to pay to live in this great Nation.
>
> But it goes beyond this. There come times when people like you have to sit in a jury box and face very, very distasteful and tough jobs.

But unless you do it, what's going to become of this great society of ours?

 We do not agree that this comment is equivalent to those in other cases which we have held to be improper and prejudicial as playing on societal alarm or as inflaming the passions or prejudices of the jury. *Cooper v. State,* 584 P.2d 234 (Okl.Cr. 1978). This comment did neither. It focused on their duty to serve as jurors. It did not convey the message that they had to vote the death penalty or to decide the case based on emotional reaction. *Tobler v. State,* 688 P.2d 350 (Okl.Cr.1984).

 Appellant charges as well that the district attorney was improperly trying to invoke the sympathy of the jurors by mentioning that the victim was the father of two children. However, this was a matter of evidence. The right to discuss the evidence and any inferences arising from it is clearly within the freedom of speech afforded counsel in closing statements. *Wacoche v. State,* 644 P.2d 568 (Okl.Cr. 1982).

 Finally, in this regard, appellant contends that the trial court denied him effective assistance of counsel. He claims that this was the result when the trial court did not allow his attorney to give argument after the State argued for the second time.

However, we note that appellant was represented at trial by one of the most experienced capital defense lawyers in the State. Though he had two attornies at trial, it was Mr. Ravitz who waived closing arguments, and whose advice appellant told the court he wanted to follow after being informed of his rights.

Indeed, the assistance of counsel was anything but ineffective. It was well planned and considered; it was purely a matter of trial strategy which we decline to second guess. *E.g., Coleman v. State,* 693 P.2d 4 (Okl.Cr.1984). There is no error.

### VII

 Pursuant to 21 O.S.Supp.1986, § 701.13(C), we have reviewed the record

and verdict herein and have determined that the sentence of death was not imposed under the influence of passion, prejudice, or any other arbitrary factor. We also find that the evidence supports the jury's finding of the four following aggravating circumstances:

1) The Defendant was previously convicted of a felony involving the use or threat of violence to the person;

2) The murder was especially heinous, atrocious or cruel;

3) The murder was committed for the purpose of avoiding a lawful arrest or prosecution; and,

4) The existence of the probability that the Defendant would commit criminal acts of violence that would constitute a continuing threat to society.

There being no error warranting reversal or modification, judgment and sentence is AFFIRMED.

BRETT, P.J., concurs.

PARKS, J., specially concurs.

PARKS, Judge, specially concurring:

Although I concur in the affirmance of the judgment and sentence of the appellant, I write separately to point out that I have conducted a proportionality review in accordance with my view that the application of 21 O.S.Supp.1985, § 701.13(C) to cases pending on appeal at the time the statute was passed renders the enactment an *ex post facto* law. *See Green v. State*, 713 P.2d 1032, 1041 n. 4 (Okl.Cr.1985). I have compared the sentence imposed herein with those previous cases either affirmed or modified by this Court, *see Johnson v. State*, 731 P.2d 993 (Okl.Cr.1987), and cases cited in *Brecheen v. State*, 732 P.2d 889, 900 (Okl.Cr.1987) (Parks, J., specially concurring), and find the sentence to be proper.