**Derek Lee TIBBS, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–87–149.**

Court of Criminal Appeals of Oklahoma.

Oct. 24, 1991.

Scott W. Braden, Asst. Appellate Public Defender, Norman, for appellant.

Robert H. Henry, Atty. Gen., Wellon B. Poe, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BRETT, Judge:

Derek Lee Tibbs, appellant, was tried and convicted by a jury for the crimes of First Degree Murder (Counts I and II), in violation of 21 O.S.Supp.1985, § 701.7, and

First Degree Rape, After Former Conviction of a Felony (Count III), in violation of 21 O.S.1981, § 1114, in Case No. CRF–86–333 in the District Court of Pottawatomie County. The jury set punishment at death for Counts I and II,[1] and life imprisonment for Count III. The trial court imposed the sentences as assessed by the jury. From this Judgment and Sentence, appellant has perfected his appeal to this Court.

Ronald DeWayne Richardson a/k/a Ronald Cummins testified that around noon on September 17, 1986, he and appellant burglarized a trailer house in Harrah, Oklahoma. Then the two went to another friend's house, Larry Belcher, to assess what they had taken from the trailer house. Appellant had taken a .357 magnum pistol and a 12 gauge pump shotgun to Belcher's house. Belcher had previously sawed off the barrel of the shotgun for appellant. Later that evening, Richardson and appellant discussed burglarizing the home of the victims in this case, Floyd and Rhonda Sue Kinnamon. Appellant had the firearms in his car. No mention was made of killing them.

On the way to the Kinnamon residence, appellant and Richardson drove by the Liberty Club, a neighborhood tavern owned and operated by the Kinnamons. The two wanted to make sure that the Kinnamons were at the club and not at home. Seeing their pickup at the club, the two drove on to the Kinnamon residence.

According to Richardson, as he and appellant were going through the house looking for valuables, they heard a car pull up to the house. He yelled to appellant that they should get out of there, but appellant told him to be quiet and stay where he was. Floyd Kinnamon came into his house and turned on the light. His wife, Rhonda Kin-

---

1. In Count I, the murder of Floyd Kinnamon, the jury found the existence of the three aggravating circumstances alleged by the prosecution: that the defendant knowingly created a great risk of death to more than one person, the murder was especially heinous, atrocious, or cruel, and the existence of a probability that the defendant would commit criminal acts of vio- lence that would constitute a continuing threat to society. In Count II, the murder of Rhonda Kinnamon, the jury found the existence of the four aggravating circumstances alleged by the prosecution, those being the same as for Count I, with the addition that the murder was committed for the purpose of avoiding or preventing lawful arrest or prosecution.

namon, was right behind him. Appellant appeared from where he had been hiding and shot Mr. Kinnamon, killing him instantly. He then grabbed Mrs. Kinnamon. He told Richardson to hold the shotgun. Then he threw Mrs. Kinnamon on the kitchen floor, ripped her clothes off, and raped her. Appellant carried her to a bedroom and told Richardson to bring him the shotgun. Richardson heard one or two shots. The two left shortly after that with several items from the Kinnamon residence. Richardson suggested that they drive to Victoria, Texas. On the way there, they threw the shotgun and their clothes into the Red River. The next day the bodies of the victims were found in their home.

## I.

Appellant raises nineteen assignments of error in his original brief and one in his supplemental brief. In his eleventh assignment of error, appellant contends that the trial court committed reversible error by giving Instruction 19 to the jury and by failing to require a unanimous jury verdict on a single theory of guilt. Since we find that the murder convictions must be reversed and remanded for a new trial based upon the errors alleged in the eleventh proposition, we will not address those remaining issues that deal solely with the murder convictions and the death sentences.

■■■■■ Appellant, along with Ronald Richardson, was charged by information with Murder in the First Degree with Malice Aforethought for the deaths of Mr. and Mrs. Kinnamon and First Degree Rape of Mrs. Kinnamon. Although appellant was not charged with robbery, the trial court instructed the jury that they could find appellant guilty of First Degree Murder based on either malice aforethought or felony-murder, with either forcible rape or robbery with a dangerous weapon as the underlying felony.[2] Appellant contends that this violated his right to due process under the Oklahoma and United States Constitutions. He also alleges that this error was of such fundamental nature that even though counsel did not object to the felony-murder instructions or give alternative instructions to the trial court, this issue is properly raised for the first time on appeal.[3] Normally, failure to object to jury instructions waives any error on appeal. However, insofar as we have found that the error complained of is fundamental in that it deprived appellant of a right essential to his defense, we will address the issue for the first time on appeal. *See Staggs v. State,* 804 P.2d 456 (Okl.Cr.1991); *West v. State,* 764 P.2d 528 (Okl.Cr.1988).

The United States Supreme Court has held that the liberty of an accused cannot be taken away without being apprised of the basic standards of fair notice of the charges and an opportunity to defend against those charges. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). It has also been long held that if a case is submitted to a jury on alternative theories and one of those theories is

---

**2.** Instruction 19 reads as follows:

You are instructed that the Oklahoma Statutes provide that a person commits murder in the first degree when he unlawfully and with malice aforethought causes the death of another human being. Malice is that deliberate intention unlawfully to take away the life of a human being, which is manifested by external circumstances capable of proof.

The statutes also provide that a person also commits the crime of murder in the first degree when he takes the life of a human being, regardless of malice, in the commission of forcible rape, robbery with a dangerous weapon, kidnapping, escape from lawful custody, first degree burglary or first degree arson.

**3.** The record reflects that an instruction on felony murder, with forcible rape and robbery with a dangerous weapon named as the underlying felonies, was included in the trial court's original prepared instructions. In what appears to have been an attempt to divert the jury's attention from these two felonies, defense counsel erroneously requested that all enumerated felonies be included in the instruction. Thus, it may not fairly be said that defense counsel invited the error, since the trial court itself set forth the erroneous instruction. Defense counsel merely requested that superfluous language be added to the trial court's instruction.

constitutionally infirm, then the entire conviction must be set aside. *See Stromberg v. California,* 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed 1117 (1931). *See also Zant v. Stephens,* 462 U.S. 862, 103 S.Ct. 2733, 2745, 77 L.Ed.2d 235 (1983); *Leary v. United States,* 395 U.S. 6, 31–32, 89 S.Ct. 1532, 1545–46, 23 L.Ed.2d 57 (1969).

This Court has held that instructing the jury on alternate theories of guilt is proper in a murder case where the evidence presented at trial supports both theories and the defendant is put on notice of the underlying felonies. *Munson v. State,* 758 P.2d 324 (Okl.Cr.1988), *cert. denied* 488 U.S. 1019, 109 S.Ct. 820, 102 L.Ed.2d 809 (1989). In *Munson,* the defendant was initially only charged with first degree malice aforethought murder. The information was later amended to include charges for kidnapping and armed robbery. A preliminary hearing was held at which the defendant was bound over for trial on all three charges. The trial court instructed the jury on first degree malice aforethought murder and first degree felony-murder based upon the kidnapping and armed robbery charges. The defendant was convicted on all three counts and sentenced to death for the murder conviction. This Court held that the trial court's instructing on felony-murder was not reversible error because the defendant had notice of the underlying felonies. However, "[i]f [the defendant] had not been put on notice of the underlying felonies that he would be required to defend against, due process considerations would have required a reversal." *Id.,* at 332.

▪ In the present case, the jury was instructed that they could find appellant guilty of murder in the first degree if they found that death was "caused by the defendant, Derek Lee Tibbs while in the commission of a forcible rape or robbery with a

dangerous weapon." (Instruction No. 25). In light of *Munson,* robbery cannot be used as the underlying felony in the death of either of the victims because the appellant was not put on notice that he would have to defend against this felony.[4] Further, the death sentence imposed in Count II for Mrs. Kinnamon's homicide cannot be upheld under a felony murder theory with rape as the underlying felony because, under the principle enunciated in *Stromberg,* if a case is submitted to a jury on even *one* constitutionally infirm theory, the conviction must be set aside.

▪ Appellant was denied due process, thereby invalidating felony murder as an alternate theory of guilt in this case. Therefore, under the principles of *Jackson,* and *Stromberg,* we find that Counts I and II must be reversed and remanded for a new trial.[5]

## II.

We now turn to appellant's remaining assignments of error, but as we stated previously, we will not address those issues that deal exclusively with the murder convictions nor the death sentences since they were reversed for a new trial.

▪ In his first assignment of error, appellant alleges that the trial court committed reversible error when it denied his request for assistance of non-psychiatric experts. Specifically, appellant requested that the State provide the services of a medical doctor, fingerprint expert and a criminal investigator. Appellant contends that the United States Supreme Court's holding in *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), should be extended to non-psychiatric experts. While this Court has found that the holding in *Ake v. Oklahoma* "must necessarily be

---

4. At the oral argument on this case, the State conceded that robbery with a dangerous weapon could not be used as the underlying felony because appellant was not given notice of same.

5. We also note that if we were to affirm the murder conviction for the death of Mrs. Kinnamon, the rape conviction would have had to be dismissed because one cannot be convicted of both felony murder and the underlying felony. *Munson,* 758 P.2d at 332.

extended to include any expert which is 'necessary for an adequate defense,' " the defendant must be able to demonstrate a need for that expert to the trial court or substantial prejudice from the lack of such experts. *Ake v. State,* 778 P.2d 460, 464 n. 1 (Okl.Cr.1989).[6] *See also Washington v. State,* 800 P.2d 252 (Okl.Cr.1990).

In effect at the time of appellant's trial, 22 O.S.Supp.1985, § 464(B), allows a trial court to provide an indigent defendant access to expert witnesses in a capital case upon a showing of necessity for expert witnesses by the defendant. This Court has stated that when the defendant does not demonstrate any need to the trial court for the experts or any substantial prejudice from the lack of experts, then there has been no abuse of discretion by the trial court in denying a defendant expert witnesses at state expense. *Munson v. State,* 758 P.2d 324 (Okl.Cr.1988); *Moore v. State,* 736 P.2d 161 (Okl.Cr.), *cert. denied* 484 U.S. 873, 108 S.Ct. 212, 98 L.Ed.2d 163 (1987); *Stafford v. Love,* 726 P.2d 894 (Okl. 1986).

In *Moore,* the defendant requested a ballistics expert in order to cast doubt on the State's ballistics expert. This Court rejected his contention that he should have been afforded the expert because the defendant's defense at trial was that he did not commit the crime and he was unable to demonstrate any specific need for the expert in preparing his defense. *Id.,* at 164. In appellant's motion to the trial court requesting expert witnesses, he did not state any specific need for these experts other than to assist in his defense. And just as in *Moore,* his defense at trial was that he did not kill the Kinnamons, but that Richardson did. Therefore, this assignment must fail.

### III.

■ In appellant's second assignment of error, he claims that he was denied a fair trial by the trial court's failure to order a change of venue. He asserts that there was such extensive pretrial publicity as to deprive him of a fair and impartial jury. Appellant attached to his motion for change of venue affidavits of three people from Pottawatomie county that stated appellant could not receive a fair trial in the county, as proscribed by 22 O.S.1981, § 561. The trial court reserved its ruling on the motion until after the voir dire examination had been completed at which time the motion was denied.

■ The presumption is that a defendant can receive a fair trial within the county in which the charges are filed. This presumption is rebuttable, but the burden is on the defendant to prove by clear and convincing evidence that the jurors were exposed to pretrial publicity and that he was thereby prejudiced. *Robison v. State,* 677 P.2d 1080 (Okl.Cr.), *cert. denied* 467 U.S. 1246, 104 S.Ct. 3524, 82 L.Ed.2d 831 (1984). The mere existence of affidavits offered by a defendant in support of a motion for change of venue only creates a question of fact for the judge to decide and is not dispositive. *Bear v. State,* 762 P.2d 950 (Okl.Cr.1988); *Walker v. State,* 723 P.2d 273 (Okl.Cr.), *cert. denied* 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 600 (1986).

In the case at bar, there was extensive voir dire examination by both the State and defense counsel. Since appellant has not provided this Court with any copies of the newspaper articles that he alleges prejudiced him before trial, we only have his motion with the affidavits and the transcript of the voir dire examination to review. Of the forty prospective jurors, only two were excused for cause because they had preconceived notions of the case based on newspaper articles and television reports they had observed. Most of the jurors who remained on the panel did state

---

**6.** This author does not necessarily subscribe to this reasoning, but rather would hold that each case must be considered on its own merits as to the extent of technical assistance that should be allowed. *See Ake v. State,* 778 P.2d 460 (Okl.Cr. 1989) (Brett, J., Specially Concurring). However, I am bound by the doctrine of stare decisis to accept the reasoning adopted by the majority of the Court in *Ake v. State.*

that they had read newspaper articles or had seen reports on the television regarding the case, but most could not remember any details of those reports and all stated that they had not formed any opinions as to appellant's guilt or innocence. *See Foster v. State,* 714 P.2d 1031 (Okl.Cr.), *cert. denied* 479 U.S. 873, 107 S.Ct. 249, 93 L.Ed.2d 173 (1986). After reviewing the record, we find that the trial court did not abuse its discretion by denying appellant's motion for change of venue. Therefore, this assignment must fail.

## IV.

■■■ Appellant alleges in his third assignment of error that the trial court abused its discretion by failing to remove Juror Morgan for cause, thereby denying him a fair trial. This Court has held that any doubt as to a juror's impartiality should be resolved in favor of the defendant by excusing the juror for cause. *Hawkins v. State,* 717 P.2d 1156 (Okl.Cr. 1986); *Tibbetts v. State,* 698 P.2d 942 (Okl. Cr.1985).

In *Hawkins,* this Court held that the trial court did abuse its discretion by not removing a juror for cause. The juror in question in that case stated during voir dire that her husband was a county deputy sheriff and her father had been killed in

"an alcohol related accident". The defendant was convicted of driving while under the influence. Even though the juror stated that she could base her decision solely on the evidence presented during the trial, this Court held that the trial court had abused its discretion by not removing her for cause at the request of the defendant. "While Juror Pettit stated that she would be an impartial juror, it is apparent that she could not, despite her stating to the contrary." *Id.,* at 1158. The defendant exercised one of his peremptory challenges to have the juror removed. This Court held that the error was harmless because the defendant was unable to demonstrate that he was prejudiced by the erroneous ruling that reduced his peremptory challenges. "In order to show prejudice, the appellant must demonstrate that he was forced, over objection, to keep an unacceptable juror." *Id.*

Just as in *Hawkins,* Juror Morgan should have been excused for cause as requested by appellant, and by not doing so the trial court abused its discretion. Even though she stated that she was a fair person and that she would only convict appellant based on the evidence presented in court, it is apparent that she could not be impartial based on her preconceived notions about the case.[7]

■■■ However, just as in *Hawkins,* this error is harmless. *See Ross v. Oklahoma,*

---

7. (Tr. 251–252):

JUROR MORGAN: I have—I have read the newspaper and so forth. But in addition to that, I have talked with people that have purported to know facts that were not reported in the newspaper or on television that has in a way—the—the evidence that would be presented in court would have to overcome what I have been told.

MR. LASTER (for the defendant): Say that, again.

JUROR MORGAN: I mean that I have—I have heard things that I would have to—that would have to—something would have to come out in court that would change what I have been told, what I have—

MR. LASTER: The sources that you—and I appreciate you not stating the substance of that, and please don't. But do you feel that the sources that have told you things that—or about purported facts of this case are so reliable that were their [sic] information not disputed in

court that you might tend to believe that without any further proof?

JUROR MORGAN: Possibly.

MR. LASTER: Do you think that—knowing what you do—and I appreciate you being honest about it. Knowing what you do, or what you think you know about the case, what people have told you, anything that you've read or seen, do you feel that you would be unable to begin this case indulging an absolute, full presumption of innocence to my client, Mr. Tibbs? Was that too long a question?

JUROR MORGAN: No, I understand what you're saying.

MR. LASTER: Okay.

JUROR MORGAN: I do have some preconceived notions. I'll put it that way.

MR. LASTER: And would you require that evidence be brought in to persuade you to the contrary? Do you feel that's true?

JUROR MORGAN: Yes, that's true.

(Tr. 252–253):

487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988). Appellant removed Juror Morgan by exercising one of his peremptory challenges. Appellant is unable to demonstrate that he was prejudiced by being forced, over objection at trial, to keep an unacceptable juror. He claims on appeal that had he not had to remove Juror Morgan, he would have used that peremptory challenge to remove one of three other venire members that ultimately sat on the jury. However, the record does not indicate that defense counsel desired to remove any other jurors through use of peremptory challenge.[8] Therefore, this assignment does not present reversible error.

## V.

▇ In appellant's fourth assignment of error he contends that the trial court erred by not allowing individual questioning of the venire members concerning pretrial publicity. This Court has consistently held that whether to allow individual voir dire is discretionary with the trial court and is an extraordinary measure. *Foster v. State*, 714 P.2d 1031 (Okl.Cr.1986); *Stafford v. State*, 669 P.2d 285 (Okl.Cr.1983), *vacated on other grounds* 467 U.S. 1212, 104 S.Ct. 2652, 81 L.Ed.2d 359 (1984); *Irvin v. State*, 617 P.2d 588 (Okl.Cr.1980). "Unless the danger of prejudicing the jurors by exposure to damaging information is a grave problem or some special purpose would be served, it is unlikely that individual voir dire would be justified." *Foster,*

714 P.2d at 1037. The record reveals that both the State and appellant conducted extensive *voir dire* examination. It does not appear that appellant was prejudiced by not questioning the venire individually. Finding no abuse of discretion on the part of the trial court, this assignment must fail.

## VI.

▇ In his seventh assignment of error, appellant complains that the trial court improperly admitted two color photographs depicting the crime scene and the victims' bodies. Defense counsel objected to the admission of the two photographs arguing that the prejudicial effect of the photographs outweighed any probative value and that how the victims died was not disputed.

▇ Admission of photographs is within the sound discretion of the trial court. We will only find an abuse of discretion if the photographs are unduly gruesome and the probative value does not outweigh the prejudicial effect. *Nuckols v. State*, 690 P.2d 463 (Okl.Cr.1984), *cert. denied* 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 323 (1985); *Dutton v. State*, 674 P.2d 1134 (Okl.Cr. 1984). The argument that pictures of this type are irrelevant when the only issue disputed at trial is the identity of the perpetrator has also been rejected by this Court. *Nguyen v. State*, 769 P.2d 167 (Okl.Cr. 1988), *cert. denied* 492 U.S. 925, 109 S.Ct. 3264, 106 L.Ed.2d 609 (1989). We find that the trial court in the case at bar did not abuse its discretion by admitting these two

---

MR. ROBERSON (for the State): Ms. Morgan, the law doesn't contemplate that you will be totally and absolutely ignorant of every offense or every act that takes place in this community. So, the fact that you know something about this, or believe that you know something about it, shouldn't be a basis for you to disqualify, unless it is so strong, and you have already made up your mind one way or the other that this man is either guilty or not guilty.

Are your beliefs that—that strong? And don't tell me which way, but either way.

JUROR MORGAN: No, I don't believe they're that strong.

MR. ROBERSON: Now, the people the you know and associate with are certainly free to express their opinions. But are you willing to

only convict based on sworn testify [sic] brought into open court, presented to you? Whatever you hear here at trial, are you going to use that as a basis for your decision of guilty or not guilty?

JUROR MORGAN: I would try.

8. (Tr. 306): [after all peremptory challenges were announced and those venire members allowed to leave]

THE COURT: ... State, is that your jury?
MR. ROBERSON: Yes, Your Honor.
THE COURT: Defendant, is that your jury?
MR. LASTER: Yes, sir, it is.

photographs; the photographs were not unduly gruesome, the probative value outweighed the prejudicial effect, and they corroborated the testimony of Richardson and illustrated to the jury the crime scene.

## VII.

■■■ Next, appellant contends in his eighth assignment of error that because of prosecutorial misconduct, he was denied a fair trial. Specifically, he alleges that one question put to him by the prosecutor during cross-examination was highly prejudicial and improper, that the prosecutor called him a coward and raised societal alarm during closing argument.[9] Defense counsel objected to the one question during cross-examination, which was overruled. While the prosecutor may have exceeded the bounds of propriety with these comments, and we certainly do not condone them, especially raising the issue of societal alarm, we do not find that appellant was unduly prejudiced by them or that these comments affected the verdict or the sentence in this case. *Behrens v. State*, 699 P.2d 156 (Okl.Cr.1985). Therefore, reversal based on this issue is not required.

## VIII.

■■■ Appellant asserts in his tenth assignment of error that there was insufficient evidence to sustain the conviction for first degree rape. He contends that the only evidence tending to connect appellant with the rape of the victim was the testimony of Richardson, which he claims was uncorroborated. The general rule is that there must be corroborative evidence to connect the defendant with the crime other than the accomplice's testimony. However, this evidence may be direct or circumstantial and need not corroborate all of the material aspects of the crime. *Fleming v. State*, 760 P.2d 208, 210 (Okl.Cr.1988); *Pierce v. State*, 651 P.2d 707, 709 (Okl.Cr. 1982). The forensic evidence presented to the jury in this case was enough to connect appellant with the commission of this crime. Seminal stains were found on the sheet where Mrs. Kinnamon was found and a pubic hair found in her vagina was microscopically consistent with that of appellant's. We find that there was sufficient evidence to corroborate Richardson's testimony as to the rape and therefore this conviction is affirmed.

For the foregoing reasons, we hold that Counts I and II shall be REVERSED and REMANDED for a new trial and that Count III shall be AFFIRMED.

LANE, P.J., and PARKS and JOHNSON, JJ., concur.

LUMPKIN, V.P.J., concurs in result.

LUMPKIN, Vice–Presiding Judge, concurring in results:

I concur in the result reached by the Court in this case. A review of the evidence and law also raises the question of whether a charge of robbery with a dangerous weapon would be supported by the facts.

---

9. (Tr. 568)

Q (Mr. Roberson): You and DeWayne took something out—What did you take to the fence and trade for the shotgun?
A: I wouldn't remember.
Q: Do you remember where you got the item that you took out there?
A: No, sir, I don't.
Q: Was it some of your personal property?
A: Well, like I said, I don't even remember what it was, so, I—I wouldn't know if it was personal or not.
Q: Was it stolen?
MR. LASTER: Your Honor, I would object to that.

THE COURT: Overruled, overruled.
A: Like I said, I wouldn't know. If I couldn't remember what it was, I couldn't remember if it was stolen.
(Tr. 670) ... That doesn't sound to me like anything but a coward....
(Tr. 705) ... And if these facts don't fit as a proper case for the death penalty, then we might as well not have it. If you can't go into your own home without being shot down from ambush, raped and murdered, then we live in a country that's not fit to live in. And you need to enforce the laws in this State and let Tibbs know that he's not going to be tolerated, he will not be tolerated at all.