**Raymond Edward SMITH, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–76–962.**

Court of Criminal Appeals of Oklahoma.

Nov. 10, 1977.

---

John T. Elliott, Public Defender, Frank Muret, Asst. Public Defender, Oklahoma County, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Jerry Earl Benson, Legal Intern, for appellee.

## OPINION

BRETT, Judge:

Appellant, Raymond Edward Smith, hereinafter referred to as defendant, was charged, tried before a jury, and convicted in the District Court, Oklahoma County, Case No. CRF–76–381, of the offense of Harboring a Criminal, After Former Conviction of a Felony, in violation of 21 O.S. 1971, § 440. His punishment was fixed at twelve (12) years' imprisonment. From said judgment and sentence a timely appeal has been perfected to this Court.

The State's first witness was Charles R. Acox, a Detective of the Oklahoma City Police Department. Officer Acox testified that he had interviewed the defendant at the Detective Bureau about another matter on January 13, 1976, at which time the defendant mentioned an escaped convict named Jerry W. Hamilton. The defendant told Acox at that time that he knew Hamilton and had seen him one time since Hamilton had escaped from the penitentiary, but that he did not know where Hamilton currently was.

On January 26, 1976, Acox along with Officers Kirby and Rhinehart went to 3233 South Brock Drive in Oklahoma City for the purpose of arresting Hamilton. Acox went to the front door of the residence and through a window in the door he observed Hamilton and the defendant sitting at a table in the kitchen. The defendant then stood up and ran to the back of the house. Acox also ran to the back of the house and, upon looking through a window, he saw defendant hand a pistol to Hamilton. Acox further testified that the defendant went out the front door while Hamilton went into what appeared to be the living room of the house. Acox then went around to the front door, entered the residence and arrested Hamilton, who was hiding in a closet in the front room of the house. A subsequent search of the closet revealed a loaded .38 caliber revolver.

On cross-examination, the the witness testified that he knew the defendant did not live at the residence. He further stated that there was a fence around the house and, although he did not know how close it was to the house, it did not obstruct his view into the house. Further examination revealed that Acox did not know that the defendant was going to be at the above location.

The State's next witness was Leroy Rhinehart, a detective with the Oklahoma City Police Department. Rhinehart's testimony was substantially the same as that of Detective Acox, except he testified that when defendant came out of the house he pulled out his revolver, ordered the defendant to the ground and searched him. When asked if anyone else were in the residence, the defendant answered in the negative. At this time, Acox came around from behind the house and said that Hamilton was armed and inside the house. Thereupon Acox and Kirby went inside and arrested Hamilton.

On cross-examination, Rhinehart testified that he did not advise the defendant of his

rights and did not ask him who owned the house.

As its first witness, the defense called C. E. Waggoner who testified that he was an investigator for the Public Defender's office. Waggoner described the physical characteristics of the residence located at 3233 South Brock. He stated that at the time of his investigation there was a curtain covering the door window with an opening two inches by 19 inches wide at the bottom. He further testified that a person standing off the porch could not see what persons seated at the table might have in their hands.

Cross-examination revealed that he had no idea of whether the curtain on the door window was closed to any extent on the date the officers were at the residence. Furthermore, although a fence and some bushes ran along the outside of the house, one could make his way to the kitchen window and see through it.

The next witness for the defense was Jerry W. Hamilton. Hamilton testified that he was acquainted with the defendant and that on January 26, 1976, he met him at a tavern. Hamilton inquired about a job with the defendant in his business. They discussed the matter and then drove to the defendant's brother-in-law's house to clean up. Finding no one home, they went next door to Jess Pulliam's house. Pulliam agreed to let the defendant clean up at his house. Subsequently, Pulliam left the house to run an errand. While sitting in the kitchen the defendant saw Detective Acox outside, and at that instant Hamilton jumped up and ran to the closet. He further testified that he had escaped from the penitentiary but had not discussed the matter with the defendant. Also, Hamilton stated that he had never seen the pistol until Detective Acox showed it to him.

The defendant then testified in his own behalf, stating that when he was asked who was in the house he said nobody because he thought they were referring to the people who lived there. He also testified that he knew nothing about the gun which was found in the closet. Furthermore, he stated

that he did not know that Hamilton was an escapee.

As his first assignment of error, defendant contends that the information did not sufficiently allege a crime against the State, and consequently the trial court lacked jurisdiction to decide the case. The charging part of the information is as follows:

"On or about the 26th day of January A.D., 1976, in Oklahoma County, State of Oklahoma, RAYMOND EDWARD SMITH whose more full and correct name is to your informant unknown, then and there being, did then and there wilfully, unlawfully and FELONIOUSLY commit the crime of HARBORING A CRIMINAL . . . in the manner and form as follows, to-wit:

"That is to say, the said defendant, in the county and state aforesaid, and on the day and year aforesaid, then and there being, did and there wilfully, unlawfully, wrongfully, feloniously and knowingly harbor, aid, assist and conceal one JERRY WILLIAM HAMILTON the said JERRY WILLIAM HAMILTON then and there being a person seeking to escape arrest for a felony committed in the State of Oklahoma; . . . "

Prior to trial, defendant's oral motion to quash the information was overruled. The State contends that in order for such a motion to be properly before the court it must comply with the statute in that it must be verified and alleged that defendant is in good faith. Also, the motion must be timely made in that by pleading to the information, the defendant waived imcompleteness, if any, by not withdrawing his plea of not guilty and filing a demurrer.

■ The State is correct in assuming that defects in an information can be waived by not entering a proper and timely demurrer, but the defects found here are of the type which are not waived and can be brought up at any time. See, *City of Tulsa v. Haley*, Okl.Cr., 554 P.2d 102 (1976); *Chandler v. State*, 96 Okl.Cr. 344, 255 P.2d 299 (1953); and, *Cornett v. State*, 96 Okl.Cr.

125, 250 P.2d 55 (1952). Title 22 O.S.1971, § 512, states:

"When the objections mentioned in Section 504 appear upon the face of the indictment or information, they can only be taken by demurrer, except that the objection to the jurisdiction of the court over the subject of the indictment or information, or that the facts stated do not constitute a public offense, may be taken after arraignment of the defendant, or may be taken at the trial, under the plea of not guilty, and in arrest of judgment."

We have held that where there is no formal and sufficient accusation the court acquires no jurisdiction to try the accused. *Carroll v. State*, Okl.Cr., 347 P.2d 812 (1959); and, *Harry v. State*, 59 Okl.Cr. 302, 58 P.2d 340 (1936).

▮ The requisites for an indictment or information are stated in 22 O.S.1971, § 401, which provides:

"The indictment or information must contain:

"1. The title of the action, specifying the name of the court to which the indictment or information is presented, and the names of the parties.

"2. A statement of the acts constituting the offense, in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended."

Examination of the information reveals that it charges the defendant with wilfully, unlawfully, wrongfully, feloniously and knowingly harboring, aiding, assisting and concealing the named fugitive from justice, but in doing so it does not specify how the defendant harbored, aided, assisted and concealed the said fugitive. Thus, the information is too indefinite and does not specifically inform the defendant of the acts committed by him in harboring, aiding, assisting and concealing the fugitive. This prevents the defendant from being able to adequately prepare his defense. Therefore, by failing to allege acts constituting the offense, the information is fatally defective. *City of Tulsa v. Haley, supra; Minyard v.*

*State*, 57 Okl.Cr. 332, 48 P.2d 864 (1935); and, *Cole v. State*, 15 Okl.Cr. 361, 177 P. 129 (1919).

The test of the sufficiency of an information is set out in *Jones v. State*, 94 Okl.Cr. 15, 229 P.2d 613 (1951), in the first paragraph of the Syllabus as follows:

"The test of the sufficiency of an information is whether it alleges every element of the offense intended to be charged, and sufficiently apprises defendant of what he must be prepared to meet and so defines and identifies the offense that if convicted or acquitted the accused will be able to defend himself against any subsequent prosecution for the same offense."

See also, *Tate v. State*, Okl.Cr., 556 P.2d 1014 (1976); and, *Fish v. State*, Okl.Cr., 505 P.2d 490 (1973).

From reading the information, this Court is of the opinion that the defendant would not be able to defend himself against any subsequent prosecution for the same offense because the information does not sufficiently apprise the defendant of what he must be prepared to defend against. In other words, the defendant would not be able to defend himself against subsequent prosecutions unless he knew what specific acts he had done in harboring the fugitive.

We find defendant's first assignment of error to be reversible error. We, therefore, deem it unnecessary to focus attention on the other assignments of error. For the above and foregoing reasons the judgment and sentence appealed from is, hereby, REVERSED and REMANDED.

BUSSEY, P. J., and CORNISH, J., concurs.