**Dennis Olen COGGIN, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–85–570.**

Court of Criminal Appeals of Oklahoma.

Nov. 12, 1987.

Rehearing Denied Dec. 14, 1987.

C. Merle Gile, Oklahoma City, for appellant.

Michael C. Turpen, Atty. Gen., Tomilou Gentry Liddell, Asst. Atty. Gen., State of Okl., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

The appellant, Dennis Olen Coggin was charged, tried and convicted in the District Court of Oklahoma County of the crime of Murder in the First Degree and was sentenced to life imprisonment. From this judgment and sentence, he appeals.

On Wednesday evening, June 6, 1984, the appellant met with Karen Sue Caton in Waukomis, Oklahoma in the home of Phyllis Barker and formed a conspiracy to injure the decedent, Jack Krichmar. Barker's testimony at trial revealed that Caton offered the appellant three hundred dollars ($300.00) dollars if he would knock Krichmar out, castrate him, and shoot him up with heroin. The appellant declined to perform the castration but agreed to attack Krichmar and was given fifty dollars ($50.00) dollars advance payment. The three again met on Thursday the 7th and Friday the 8th to further develop the scheme of their attack. They discussed what the plans were, and when and where they would take place. It was during this time that the appellant scheduled an appointment to meet with Krichmar, a real estate broker with Frontier Realty, whereby he posed as a prospective home buyer and requested Krichmar to show him a vacant house. The premise of their plan was for the appellant to enter the vacant home prior to their 2:30 appointment on Friday the 8th, hide out in the closet and jump Krichmar when he entered the home. Inspections of the alleged scene of the attack as well as Krichmar's van at the real-estate office were also made by the appellant. A key to the vacant home and use of an automobile were also provided to the appellant by Caton.

Shortly after the Friday appointment, at approximately 3:00 p.m., Gary Smith, an associate of Krichmar, observed Krichmar driving his van in an unusual manner and saw him have a collision. As Smith went to assist his friend, he asked what had happened and Krichmar responded that he had been jumped. Having suffered multiple stab wounds and lacerations, with one large stab wound across his throat, Krichmar subsequently died.

The testimony of Kelly Knox revealed that shortly after 4:00 p.m. the same day, the appellant visited Knox's house to return a knife which he had borrowed earlier in the day. Knox noticed that when the appellant stepped out of the car he was driving, he had blood on him from his hip to his knee and was holding a bloody knife in one hand and a tire tool in the other. When Knox asked him what happened, the appellant responded that he had to "kill somebody". He related how he had hit the person in the head three times with the tire tool and how his victim pleaded for him not to hit him anymore. The appellant then said that he had to cut his victim's throat because he had identified him. He then showered at Knox's house, changed clothes, and left. The appellant met again with Caton and Barker later that evening.

In commenting on the success of his attack, appellant stated that he had "cut him enough to where he couldn't talk." He also commented that Krichmar had to be dead because when he stabbed his victim in the back, the knife "had to have hit the lung because he turned the knife and heard the gristle pop." Testimony further revealed that money exchanged hands between the appellant and Caton.

Later that evening, the appellant visited his brother-in-law, Robert Grimes, and told Grimes that "he just had to do an old boy in." When Grimes sought an explanation, the appellant replied that he had hit his victim three times in the head with a tire iron, and when Krichmar looked up and recognized him, he cut his throat and left him lying on the floor. When Grimes asked his brother-in-law what he had gotten out of it, the appellant replied "five."

In his first assignment of error, the appellant contends that the trial court erred in overruling both his motion for directed verdict and demurrer to the evidence because the State failed to rebut the appellant's evidence of his insanity, and because the jury's verdict was supported by insufficient evidence.

This Court addressed this identical issue recently in *Clark v. State*, 718 P.2d 375, 377–8 (Okl.Cr.1986), in which a majority of the Court held the following:

The M'Naghten rule is the test for insanity in Oklahoma. 21 O.S.1981, § 152. The initial burden is on the defendant to establish a reasonable doubt as to his sanity. *Munn v. State*, 658 P.2d 482 (Okl.Cr.1983). If the defendant establishes a reasonable doubt of his sanity, the presumption of sanity vanishes and it is incumbent upon the State to prove beyond a reasonable doubt that the defendant could distinguish between right and wrong at the time of the offense.

\* \* \* \* \* \*

On Murder prosecution, the question of insanity at the time of the commission of the crime, presents a question of fact for the sole determination of the jury, and where there is any evidence tending to support the finding it is not the province of the appellate court to weigh the same. *Nauni v. State*, 670 P.2d 126, 133 (Okl. Cr.1983).

Moreover, this Court will not inquire into the credibility of the witnesses nor weigh conflicting testimony. *Jones v. State*, 479 P.2d 591 (Okl.Cr.1971).

In determining the issue of insanity, the jury must consider all of the evidence presented, not merely the testimony of the expert witnesses, and the weight and credibility of expert opinion is for the jury to determine and such testimony is not conclusive even where it is uncontroverted. *Munn*, at 486. The jury must determine the weight and credibility of both expert and lay witnesses in light of the particular facts and circumstances shown in the case. Id.

In the present case, the State presented the testimony of several lay witnesses which clearly revealed the appellant's premeditated design to injure the decedent. These witnesses also revealed that shortly after the murder, the appellant claimed he "had to do an old boy in," that he had to "kill somebody," and that he had to "cut him enough to where he couldn't talk," because his victim had identified him. Other evidence affirmed the appellant's necessity to murder Krichmar when shortly after the attack, the appellant described the means and manner in which he murdered his victim. Evidence was further presented that, in the course of scheming the attack, the appellant and Caton discussed a payment of three hundred ($300.00) dollars, and that he received money following the murder.

After the State's case-in-chief, the appellant made a motion for directed verdict and demurred to the evidence. Both motions were denied. The appellant then presented his defense after which he renewed his motions. In his defense, the appellant presented the testimony of Dr. John Wilson, and Dr. Tom Williams, both of whom are experts in the diagnosis and treatment of victims of Post Traumatic Stress Disorder. In their opinions, the appellant, a veteran of the Vietnam War, was in a

disassociative-like state at the time he stabbed Krichmar. They believed that the appellant, hiding in a heated closet near a water heater combined with the sight of blood of the victim after the initial blows with the tire tool, triggered a "flashback" to Vietnam which put the appellant in a disassociative state. Because of this state, the appellant only remembers pieces of his acts and did not remember stabbing the victim. In their opinions, the appellant could not distinguish right from wrong at the time he stabbed Krichmar, nor could he understand the nature and consequences of his actions.

■ In the instant case, the evidence presented by the State showed that the appellant calculated his scheme to assault Krichmar and then knowingly, willfully and maliciously murdered him to prevent his subsequent identification. Furthermore, the statements made by the appellant after the murder indicate that he knew right from wrong when he brutally beat and stabbed his victim.

After careful review of the evidence, we conclude that the State presented evidence by which any rational trier of fact could conclude that the essential elements of the crime, including the appellant's sanity at the time of the offense, had been proven beyond a reasonable doubt. *See Spuehler v. State*, 709 P.2d 202 (Okl.Cr.1985). This assignment is without merit.

■ In his second assignment of error, the appellant contends that the trial court erred in not admitting an educational video tape on the effects of Post Traumatic Stress Disorder because its probative value outweighed the prejudicial effect for the appellant. This Court has consistently held that the admissibility of demonstrative evidence is a question of legal relevance that is within the discretion of the trial court whose decisions will not be disturbed on appeal absent an abuse of that discretion. *Banks v. State*, 701 P.2d 418 (Okl.Cr.1985). Finding no such abuse, we uphold the lower court's denial of admitting the film. Moreover, the appellant's exhaustive presentation of expert testimony regarding Post Traumatic Stress Disorder and

the appellant's psychological reaction to the Vietnam War was more than adequate to apprise the jury of his mental state at the time of his act. This assignment is meritless.

■ Finally, the appellant alleges that he was subjected to a cruel and unusual sentence which resulted from the juror's failure to receive an instruction concerning the commitment of persons acquitted by reason of insanity. This Court has repeatedly held that 22 O.S.1981, § 1161 does not give authority for an instruction concerning the legal effect of a verdict of not guilty by reason of insanity. *Boutwell v. State*, 659 P.2d 322 (Okl.Cr.1983). Furthermore, the trial court correctly instructed the jury on all material issues raised by the evidence at trial, and sufficiently instructed the jury as to the appellant's defense in light of the evidence presented. *Harris v. City of Tulsa*, 589 P.2d 1082, 1086 (Okl.Cr.1979). This assignment is without merit.

The judgment and sentence is AFFIRMED.

BRETT, P.J., and PARKS, J., concur.