Robert Wayne LAMBERT, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–88–388.

Court of Criminal Appeals of Oklahoma.

Dec. 8, 1994.

As Corrected Dec. 28, 1994.

Rehearing Denied Jan. 9, 1995.

496

Russell C. Miller, Sapulpa, for appellant at trial.

Mark Barrett, Asst. Appellate Public Defender, William H. Luker, Deputy Appellate Counsel, Norman, for appellant on appeal.

Lantz McClain, Dist. Atty., Sapulpa, for the State at trial.

Susan B. Loving, Atty. Gen., A. Diane Blalock, Asst. Atty. Gen., Oklahoma City, for appellee on appeal.

### OPINION

LANE, Judge:

Appellant, Robert Wayne Lambert, was convicted April 11, 1988 of two counts each of Murder in the First Degree, Kidnapping, Robbery with Firearms, and Larceny of an Automobile and one count of Arson in the Third Degree after a two stage jury trial in the District Court of Creek County, Case No. CRF–87–240. Following the guilty verdicts, Appellant was sentenced in accordance with the jury's recommendations. He received the death penalty on each count of Murder, ten years per count for Kidnapping, one hundred years per count for Robbery with Firearms, twenty years per count for Larceny of an Automobile and fifteen years for the third degree Arson. Appellant has brought this appeal challenging both the guilty verdicts and the sentences imposed for the crimes.

Laura Lee Sanders and Michael Houghton were sitting in Sanders' car outside a Tulsa bar during the early morning hours of October 6, 1987, when they were approached by two men, later determined to be Scott Allen Hain and Robert Wayne Lambert. Hain and Lambert were in the parking lot of the bar considering whether to rob a nearby house.

Hain and Lambert forced their way into Sanders' car by threatening Houghton with a knife.

Hain drove the car away from the bar, then stopped and robbed Houghton at gunpoint. When Houghton resisted the robbery, he was tied up and put into the trunk of the car. A short while later, they stopped again and put Sanders in the trunk as well.

After robbing Houghton and getting the keys to his truck, the Appellant and Hain went back to the bar to get Houghton's truck. Appellant drove the truck away from Tulsa toward Sand Springs, eventually driving down a rural Creek County roadway. Hain followed in Sanders' car with Sanders and Houghton still in the trunk.

The two men took some things from Sanders' car and put them in the truck. One of them cut the gas line to the car and set it on fire by putting lighted newspaper and a blanket under the dripping fuel line. Houghton and Sanders were banging on the trunk and yelling. Appellant and Hain left the area, but returned a short time later to see if the fire was burning well.

Prior to leaving the state, the two men stopped at a friend's house in Jennings and left in his garage a bag of things which they had taken from Sanders' car. They traveled to Wichita, Kansas in Houghton's truck. After spending the five hundred and sixty-five ($565.00) dollars taken from Houghton and Sanders, the two returned to Tulsa, where they were apprehended on the evening of October 9, 1987.

### COMPETENCY PROCEEDINGS

Prior to the commencement of the trial on these charges, Appellant requested an evaluation of his competency to stand trial. His request was granted, the proceedings were stayed and Appellant was sent for evaluation to Vinita State Hospital. Following the evaluation, a post-examination competency hearing was conducted to determine whether Appellant could stand trial. At Appellant's request, a jury was impaneled to try the issue.

After the close of the evidentiary portion of the trial, when both sides had rested, the

trial court directed a verdict of competency, finding that Appellant had failed to establish a doubt as to his competency. The jury was released without considering the case. We found this action by the trial court to be improper and remanded the case for additional consideration of this issue. *Lambert v. State*, 808 P.2d 72 (Okl.Cr.1991).

Prior to conducting a new competency hearing, we directed the trial court to determine the feasibility of holding such a hearing retrospectively. If the trial court determined that a new hearing was in fact feasible, as it did, then a new hearing was to be conducted. Once again, Appellant chose to have a jury consider the question of competency.

On appeal, Appellant has challenged the constitutionality of both the competency proceedings in general and as applied to him, retrospectively, in this case. He also claims that the jury was allowed to consider improper evidence, that his request for a change of venue or individual voir dire should have been granted and that the jury was improperly instructed as to the burden of proof and the effect of their decision. We find no merit to these claims.

■ Appellant's first claim on appeal concerns the constitutional standards under which determinations of competency are made. In its very succinct opinion of *Dusky v. United States*, 362 U.S. 402, 403, 80 S.Ct. 788, 789, 4 L.Ed.2d 824, 825 (1960), the Supreme Court defined the level of competency that must be established in order to allow criminal prosecution to continue once a doubt has been raised:

> ... it is not enough for the district judge to find that 'the defendant [is] oriented to times and place and [has] some recollection of events,' but that the 'test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.'

These same principals, contrary to Appellant's assertions otherwise, are part of Oklahoma law. In *Middaugh v. State*, 767 P.2d 432, 434 (Okl.Cr.1988), we held:

> This Court has developed a two prong test to determine whether a person is competent to stand trial. First, the accused must have sufficient ability to consult with his attorney. Second, the accused must have a rational and actual understanding of the proceedings against him.

This interpretation of 22 O.S.1981, § 1175.1 parrots the Supreme Court's standards. Appellant suggests that because Section 1175.1 indicates that the accused must understand the nature of both the charges and the proceedings, it somehow creates a different standard than that discussed above. We disagree.

Competency is defined in 22 O.S.1991, § 1175.1(1) as "the present ability of a person arrested for or charged with a crime to understand the nature or the charges and proceedings brought against him, and is able to effectively and rationally assist in his defense." In our view, there is little or no difference between the effective meaning of the statute and the terms used by the Supreme Court. In both cases, the accused is required to understand the charges against him, the implications of the charges against him and be able to *effectively* assist his attorney in defense of the charges against him. Appellant's assault on the word "nature" finds little practical effect when measured against the term "rational understanding."

Appellant offers a definition of the term "nature" with which we find no fault; "the essential quality of the thing, essence." The definition is from Webster's New World Dictionary and in our view could easily serve as the definition for "rational understanding." If an accused has some level of awareness of the essence of the charges and the proceedings related to those charges, it is fair to say not only that he comprehends the nature of the proceedings, but also that he has a rational understanding of the events occurring around him. *See Ake v. State*, 778 P.2d 460, 464 (Okl.Cr.1989).

In short, we find no merit to Appellant's argument that the Oklahoma statutes fall short of a constitutionally acceptable means of measurement when competency to stand

trial is at issue. We are, therefore, unable to conclude that Appellant was subjected to an unfair determination of competency or that the jury, which was properly instructed in Oklahoma law, applied any unconstitutional factors when making that determination.

■ We reach the same conclusion with respect to Appellant's claim that the remand of his case for a subsequent, retrospective post-examination competency hearing was unconstitutional. We have addressed this issue on a number of occasions in the past. In *Boltz v. State*, 806 P.2d 1117 (Okl.Cr. 1991), *cert. denied*, 502 U.S. 846, 112 S.Ct. 143, 116 L.Ed.2d 109 (1991), we rejected an identical claim. We are not presented with any reason here which compels us to change or reconsider our position on this issue. *See also, Clayton v. State*, 840 P.2d 18, 25 (Okl. Cr.1992); *Thomas v. State*, 777 P.2d 399 (Okl.Cr.1989).

■ *Boltz* is also determinative of Appellant's argument that his video-taped confession was improperly admitted as evidence of competency. In *Boltz* we held that consideration of the defendant's trial testimony in a retrospective competency trial was not only proper, but that it " 'provided a solid starting point for reliable reconstruction of the pertinent facts.' " *Id.* at 1122, quoting *United States v. Makris*, 535 F.2d 899 (5th Cir.1976) *cert. denied* 430 U.S. 954, 97 S.Ct. 1598, 51 L.Ed.2d 803 (1977). Certainly if the use of ex post facto trial testimony was allowed in *Boltz,* the use of Appellant's confession, given prior to trial and available from the beginning of this entire procedure, is permissible in determining Appellant's competence to stand trial. Assuming the confession was otherwise admissible (which is the next section of Appellant's argument), there is no reason why it should not have been offered as substantive evidence of Appellant's competency.

■ Prior to the admission of the tape, the trial court made a proper inquiry into whether the confession was made with an appropriate understanding of the concurrent relinquishment of rights. *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). The trial court found the confession to be voluntarily made and the appropriate rights validly waived.

■ There is no argument in this case that Appellant's rights were not explained to him. Rather, Appellant's complaint is that the testimony offered during the competency hearing demonstrated that his intelligence level was so low he could not have understood the rights, despite assertions to the contrary made at the time the confession was given. There is no indication that the trial court did not consider this evidence at the time it entered its ruling. In fact, there is nothing presented through this appeal which would indicate that the trial court erred in any manner. Our standard of review for a question of this nature requires that the decision of the trial court be affirmed if it is supported by a preponderance of the evidence. *Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). Our review of the evidence indicates that the decision of the trial court was appropriate under the individual facts and circumstances of this case. *Hayes v. State*, 738 P.2d 533 (Okl.Cr.1987).

■ As his next proposition of error Appellant claims that the trial court erred when it refused to grant his request for a change of venue. In support of his motion, Appellant presented newspaper articles, a tape of a newscast and a list of signatures of people who said that they had heard about Appellant's crime. This alone is not dispositive of the issue. *Stafford v. State*, 665 P.2d 1205 (Okl.Cr.1983), *cert. granted* 467 U.S. 1212, 104 S.Ct. 2651, 81 L.Ed.2d 359 (1984), opinion on rehearing, 700 P.2d 223 (Okl.Cr.1985), *cert. denied*, 474 U.S. 865, 106 S.Ct. 188, 88 L.Ed.2d 157 (1985).

■ When considering a claim of this nature, we have adopted the two-part test established by the United States Supreme Court in *Murphy v. Florida*, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975):

First, there are some cases in which prejudice will be presumed, if the fact pattern reveals "the influence of the news media, either in the community at large or in the courtroom itself, pervaded the proceedings." The key to this standard appears to be the "solemnity and sobriety to which a

defendant is entitled in a system that subscribes to any notion of fairness and rejects the verdict of the mob." If the facts are not sufficiently egregious to give rise to the presumption, the so-called "totality of the circumstances will be examined to determine whether the defendant received a trial which was "fundamentally fair." A review of the case should focus on the *voir dire* statements of the individual jurors, *voir dire* statistics, and the community atmosphere as reflected in the news media. (Citations omitted.)

*Walker v. State,* 723 P.2d 273, 278 (Okl.Cr. 1986).

The burden of establishing that he has been so prejudiced by publicity that he is unable to receive a fair trial lies squarely with the defendant. *Foster v. State,* 714 P.2d 1031, 1037 (Okl.Cr.1986). Merely establishing that some jurors had knowledge of the case is not enough to establish prejudice. *Wooldridge v. State,* 659 P.2d 943 (Okla.Cr. 1983). In *Price v. State,* 782 P.2d 143, 146 (Okl.Cr.1989), we held:

A mere showing that pretrial publicity was adverse to the defendant is not enough. Nor is the existence of affidavits dispositive of this issue. The defendant must show by clear and convincing evidence not only that the jurors were exposed to the publicity, but that he was thereby prejudiced. (Citations omitted.)

■ The record indicates that the media coverage of this trial was limited to a short time period. The jurors all indicated that they either had not seen the stories or that they could decide the case based on the court's instructions without influence from the media. We do not find, from the record before us, that Appellant has established any prejudice by clear and convincing evidence which would justify our reversal of the trial court's denial of his motion. *Costa v. State,* 753 P.2d 393 (Okl.Cr.1988).

■ The same is true with respect to Appellant's request for individual voir dire of the veniremen. Although the panel members were not ultimately questioned individually, the trial court made it clear that if he saw the need for this type of questioning, he would grant the motion. The situation never arose. There is no right to individual voir dire and under the circumstances presented here, we do not find that the trial court abused his discretion by not conducting jury selection in the manner requested by Appellant. *Trice v. State,* 853 P.2d 203, 209 (Okl. Cr.1993); *Hain v. State,* 852 P.2d 744, 749 (Okl.Cr.1993); *Romano v. State,* 847 P.2d 368, 376–377 (Okl.Cr.1993); *Douma v. State,* 749 P.2d 1163 (Okl.Cr.1988).

■ In his next series of arguments, Appellant claims the jury was allowed to consider evidentiary materials that should not have been admitted. Appellant complains that the State's expert, Dr. Thomas Goodman, testified to certain statements made by Appellant's co-defendant, Hain, alleging they planned to fake suicide attempts in an effort to be transferred from jail to Eastern State Hospital. Appellant objected to the testimony as hearsay, and was overruled. The State claims the information was properly admitted in that Dr. Goodman based his opinion concerning Appellant's competency on a variety of factors and sources of information, one of which was Hain's revelation, and therefore an exception to the hearsay rule.

It should be noted that Hain's statements were not, as Appellant alleges, inculpatory confessions of a non-testifying co-defendant. The references were to Appellant's behavior after his arrest, more specifically the allegation that his suicide attempts (which he attributed to mental illness and his lack of competency) were really a scheme to be moved from jail to a hospital. Additionally, there is Dr. Goodman's testimony concerning Appellant's competency based on his observation of Appellant, administration of various tests, and conversations with those persons who had an opportunity to observe his behavior.

Appellant acknowledges the State's reliance on the hearsay exception for data relied upon as the basis for expert opinion, but alleges the exception is limited. *See* 12 O.S. 1991, §§ 2703, 2705. Citing *Sellers v. State,* 809 P.2d 676, 684–685 (Okl.Cr.1991), *cert. den.,* 502 U.S. 912, 112 S.Ct. 310, 116 L.Ed.2d 252 (1991), he claims the exception cannot be used to introduce documents previously ex-

cluded as inadmissible hearsay. Additionally, he claims that before the hearsay evidence is admitted pursuant to the expert testimony exception, the proponent must show that the evidence involved is the type reasonably relied upon by experts in the particular field in forming opinion.

Dr. Goodman testified that his opinion as to Appellant's competency was based on an examination of jail records, and that the reference to Hain's statement concerning the faked suicide scheme was part of the records of the Tulsa County Sheriff's Department. Appellant's objection was overruled. (Appellant claims there is no such reference in the records of the Tulsa County Sheriff's Department, but those records were admitted into evidence and there is no further cross-examination of the witness to specify where the reference appeared in the records nor was any objection made at trial.)

The record also contains testimony from Dr. Goodman that his conversations with Hain were relied upon in determining Appellant's competency, and evaluating his mental state. There is no assertion that the information related by Goodman was offered to prove the truth of the matter asserted. Rather, the statement was used to evaluate Appellant's state of mind, and to show his ability to plan. Although there was no testimony concerning whether conversations with third parties were of the type reasonably relied upon by other psychiatrists in diagnosing competency, Appellant failed to properly preserve this issue for review by specifically objecting at trial. *Van White v. State*, 752 P.2d 814, 818 (Okl.Cr.1988), rev'd on other grounds.

In addition to an admonishment to Dr. Goodman by the prosecutor to refrain from talking about Hain the following instruction was given to the jury at Appellant's request:

**The COURT:** Ladies and gentlemen, let me first give you an instruction this morning about the testimony yesterday. You are instructed not to consider in any manner, the evidence of what Scott Hain allegedly said to Dr. Goodman. Is that agreeable, Counsel?

**MR. BARRETT:** Yes, Your Honor.

**MR. MCCLAIN:** Yes, Judge.

Appellant admits that the jury was instructed to disregard Hain's statements to Goodman, thereby curing any error which may have occurred from the admission.

■ Appellant next claims that the jury verdict finding him competent should be nullified, alleging the introduction of incompetent and irrelevant evidence. He first argues that Dr. Goodman's testimony invaded the province of the jury in that he discounted the diagnosis of schizophrenia noted on Appellant's admission chart to Eastern State. Appellant's real complaint is that he disagrees with Dr. Goodman's opinion as to his competency. The record reflects Dr. Goodman was qualified as an expert witness in the area of forensic psychiatry and testified as to his *opinion* as to Appellant's competency. Appellant cross-examined Dr. Goodman extensively as to his qualifications and Dr. Deza's admitting diagnosis of Appellant's schizophrenia. As such, the determination of which expert to believe is a determination left to the jury. We find no error here.

■ Appellant then claims that admission of evidence of other crimes and particulars of the crimes charged was error. During the competency hearing, Appellant's confession, over his objection, was introduced as evidence and submitted to the jury for consideration. Likewise, there was testimony concerning Appellant's prior criminal history and activity, all of which were objected to, and the objections overruled. Appellant alleges that while evidence of other crimes is appropriate in criminal cases, pursuant to 12 O.S.1991, § 2404(B) as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, it is not admissible in a competency hearing as guilt for the crime charged is not at issue.

■ Appellant's claim is without merit. The trial court is given wide latitude in determining probative value of a prior conviction weighed against its prejudicial effects for the purposes of admissibility of a conviction. *Johnson v. State*, 761 P.2d 484 (Okl.Cr. 1988); *Campbell v. State*, 636 P.2d 352 (Okl. Cr.1981). As was previously noted, a compe-

tency hearing is not a criminal prosecution, therefore reliance upon the prohibition against other crimes evidence is misplaced. *See Miller v. State,* 751 P.2d 733, 738 (Okl. Cr.1988). Appellant claims questions asked of witnesses insinuated the existence of other crimes, irrelevant to the case, and were intended only to prejudice Appellant. Specifically, Jean Peterson, Appellant's counselor during his school years, was asked if Appellant was attempting to rape another student while he was a first grader. That question came in response to testimony elicited by Appellant on direct examination that Appellant and a female child were found on the playground, partially nude, mimicking the sex act. In response to the same witness' testimony that she doubted Appellant knew "what murder is", she was asked on cross examination if Appellant could have understood the consequences of setting fire to a car with people in the trunk.

Questions asked of Dr. Murphy, Appellant's witness, as to whether hitting someone with a hammer and rape were violent actions were in response to Dr. Murphy's testimony that Appellant did not demonstrate violent or destructive behavior. The information concerning Appellant's arrest in the months prior to the commission of the murder charged here was contained in the documents examined by the doctor to determine Appellant's competency to stand trial and was properly used to impeach his testimony.

Again, the statements made by Dr. Goodman concerning Appellant's rape and sodomy of a woman in July of 1987 after being released from Oklahoma Osteopathic Hospital and the testimony on cross-examination that Appellant had cut off another man's finger with a razor blade while incarcerated in the Tulsa County Jail after his trial were references to instances contained in the records examined in determining Appellant was competent to stand trial. The information as to the rape and sodomy were used to support Goodman's diagnosis of Appellant's anti-social personality disorder, as opposed to schizophrenia, and the objection to the introduction of this evidence was properly overruled by the trial court. The information concerning the finger-cutting incident was

never objected to at trial, therefore any claim of error with respect to the introduction of that evidence is waived. Moreover, that information was elicited in direct response to Appellant's questions concerning his propensity to represent a danger to himself and others.

As was noted in *Campbell, supra,* at 355, the jury in a competency hearing is charged with determining whether the defendant can effectively assist counsel in his defense and appreciate the charges against him. The jury's knowledge of the charge is therefore essential in determining if the defendant has the present mental capacity to appreciate the nature of the charges against him. Appellant's objections as to the introduction of his confession and other crimes were properly overruled insofar as they went to a determination of Appellant's competency.

With respect to Officer Duncan's testimony, Appellant alleges the testimony was unnecessary to facilitate understanding of his confession. As we noted in *Campbell, supra,* competency to stand trial is not solely a medical issue. Rather, testimony from lay persons who have observed the defendant's behavior and communicative abilities is proper, provided the observations are reasonably proximate in time to the competency trial. Officer Duncan interrogated Appellant, and testified to his observations concerning Appellant's behavior, appearance, and apparent ability to understand the nature of the crime committed, waiver of his *Miranda* rights and the charges against him. The objection was properly overruled.

■ Proposition IX claims the trial court erred by refusing to place the burden of proving Appellant's competency on the State. Appellant admits that 22 O.S.1991, § 1175.4(B) places the burden of proof on the party seeking to establish incompetency, but suggests that the burden is unreasonable. Appellant's dissatisfaction with the law as written is insufficient to warrant reversal of the jury's determination that he was competent to stand trial.

■ Likewise, Proposition X alleges reversible error for the trial court's failure to instruct the jury as to Appellant's disposition

in the event the jury found him incompetent to stand trial. Appellant cites no authority for this interesting albeit unconvincing argument in which he claims the jury's finding of competency should be nullified. While we have addressed the issue of the unavailability of jury instructions in insanity defense cases, the question presented by Appellant is one of first impression for this Court. By analogy, we find that Appellant was not entitled to an instruction concerning his disposition in the event he was found incompetent to stand trial as his disposition subsequent to the verdict was immaterial to the jury's process of rendering a verdict as to his competency.

In *Nauni v. State,* 670 P.2d 126 (Okl.Cr. 1983) we found no error in the trial court's failure to deliver an instruction on Oklahoma law regarding commitment of persons acquitted by reason of insanity. Citing *Thomsen v. State,* 582 P.2d 829, 832 (Okl.Cr.1978), we stated "the statute providing for possible commitment following acquittal by reason of insanity, presently codified as 22 O.S.1981, § 1161, 'is merely a procedural statement of disposition subsequent to the verdict and is immaterial to the process of rendering a verdict concerning the sanity of the accused.' *See also Boutwell v. State,* 659 P.2d 322 (Okl.Cr.1983). We find no error since potential commitment was immaterial to the process of rendering a verdict concerning Appellant's sanity." *Nauni* at 134. Likewise, the Appellant in *Coggin v. State,* 745 P.2d 1182 (Okl.Cr.1987) alleged that he was subjected to a cruel and unusual sentence which resulted from the juror's failure to receive an instruction concerning the commitment of persons acquitted by reason of insanity. We again found that 22 O.S.1981, § 1161 does not give authority for an instruction concerning the legal effect of a verdict of not guilty by reason of insanity. *Coggin* at 1185, citing *Boutwell v. State,* 659 P.2d 322 (Okl.Cr.1983). And in *Boutwell,* supra, we found that the trial court properly refused the instruction requested by Appellant as to the legal effect of a verdict of Not Guilty by Reason of Insanity, finding the statute in question was merely a procedural statement of disposition subsequent to the verdict. *Boutwell* at 327.

Just as we have determined that the defendant is not entitled to a jury instruction regarding the consequences of a "Not Guilty by Reason of Insanity" verdict, we refuse to require an instruction as to a defendant's disposition upon a finding that he is incompetent to stand trial. Pursuant to 22 O.S.1991, § 1175.6.A., after a finding by the court or jury in an incompetency proceeding, ". . . the court shall issue the appropriate order regarding the person." To that extent, the incompetency statute, like the insanity defense statute, is merely a procedural statement of disposition subsequent to the verdict. We find no error here.

## FIRST STAGE PROCEEDINGS

▆ Next we turn to the allegations of error which Appellant suggests occurred during the first stage proceedings, specifically, Propositions II through XIII of his first brief. Appellant claims improper instructions given during the first stage require reversal, that his confession was improperly admitted, that improper remarks were made during the prosecution's closing argument, that the trial court erred in admitting certain evidence, ineffective assistance of counsel, insufficient notice of the State's felony-murder theory, failure to require concurrence on a single theory of guilt, double jeopardy, and failure to consider mitigating evidence. We will consider these arguments in the order they occurred at the trial.

In Proposition X Appellant argues the information filed was insufficient to put him on notice that the State was pursuing a felony-murder theory. After the State rested, Appellant took the stand, and testified to committing the robbery and kidnapping. His contention was that he never intended to kill anyone, and that the fire which ultimately killed the victims was set by his co-defendant, over his objection. He also testified he attempted to extinguish the blaze but was unable to do so. The crucial part to Appellant's argument is that he testified to committing the robbery and kidnappings. When the State requested an instruction on felony murder, Appellant objected claiming prejudice. The objection was overruled and the jury was instructed as to felony murder.

Appellant's complaint is that had he known the jury was to be instructed on felony murder, he would never have testified, since testifying that he committed the robbery and kidnappings guaranteed convictions for felony murder. He claims, and we are inclined to agree, that he would never have willingly admitted to the jury that he committed a crime which would have resulted in his receiving the death penalty.

An information is sufficient if it (1) contains the elements of the offense charged, (2) fairly informs the accused of the charges against which he must defend, and (3) enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. *See Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974); *Smith v. State*, 572 P.2d 262, 265 (Okl.Cr.1977); *Munson v. State*, 758 P.2d 324, 332 (Okl.Cr.1988). The test to assess the sufficiency of the information is two-pronged: (1) whether the defendant was in fact misled by it, and (2) whether conviction under it would expose the defendant to the possibility of being put in jeopardy a second time for the same offense. *Wolfenbarger v. State*, 710 P.2d 114, 115 (Okl.Cr. 1985), *cert. denied*, 476 U.S. 1182, 106 S.Ct. 2915, 91 L.Ed.2d 544 (1986), *Jefferson v. State*, 675 P.2d 443 (Okl.Cr.1984). We must emphasize that the information here was sufficient insofar as it contained the essential elements of the crimes of first degree malice aforethought murder, kidnapping, armed robbery, larceny of an automobile and third degree arson, and is sufficient to bar future prosecution for those offenses. The problem comes in failing to also charge felony murder and instructing on the same after Appellant has relied on the information to his detriment.

The court instructed on a crime not charged in the information, and Appellant is able to show that he was prejudiced by that instruction.[1] Appellant's defense strategy was to convince the jury that he was not

guilty of the crime charged, as there was no intent to murder the victims.

The State cites *Munson*, supra, in support of its contention that the information was sufficient. (*Munson* was decided after Appellant's case (June 24, 1988), and therefore is not controlling as to Appellant's case.) The State also alleges the information was not amended after preliminary hearing because it felt it had insufficient evidence to support a felony murder charge, and thought Appellant's demurrer to such an amendment would be granted.

Regardless of the reasons for the failure to amend, and assuming *Munson* is controlling, the requirements specified in *Munson* were not met in this case. While the State's reading of *Munson* is correct as to the criteria specifying the sufficiency of the information, it does not read far enough. In *Munson*, supra, we also stated:

> Here, the information contained the essential elements for the crimes of first degree malice aforethought murder, kidnapping, and armed robbery, is sufficient to bar future prosecution for the same offense, ***and appellant has not shown that he was misled by it.*** See Wolfenbarger v. State, 710 P.2d 114, 115 (Okl.Cr.App.1985), *cert. denied*, 476 U.S. 1182, 106 S.Ct. 2915, 91 L.Ed.2d 544 (1986). (emphasis added)

*Munson* at 332.

Unlike *Munson* and *Wolfenbarger* Appellant is able to show that he was misled and prejudiced by the State's failure to charge felony murder in the information, as he would not have testified had he known the jury would have been instructed as to felony murder. We therefore find it was reversible error, in this particular instance, for the district court to instruct the jury as to felony murder over Appellant's objection, after Appellant had taken the stand and testified as to the elements necessary to prove felony murder.

We find that Appellant's convictions for First Degree Murder must be reversed and

---

1. We find it necessary to clarify that the same problem did not arise in the case of Appellant's co-defendant, Scott Allen Hain, F–88–466. Mr. Hain did not testify at trial, and is therefore unable to show any prejudice from the failure to charge felony murder in the information, as is present in Appellant's case.

remanded for new trial. However, we affirm Appellant's remaining convictions. We also recognize that should the State re-file the information charging felony murder, in addition to or in place of malice aforethought murder, the trial court can abrogate the conviction for armed robbery in the event Appellant is convicted of felony murder.

Appellant's Proposition V, claiming the jury instructions failed to require proof of all of the elements of robbery-murder is rendered moot by the reversal of his murder convictions, as is Proposition XI, wherein he alleges failure to require that a substantial majority of the jury concur on a single theory of guilt requires reversal.

■ Appellant claims reversible error in the admission of his video-taped confession alleging the trial court failed to hold an in-camera hearing to determine its admissibility and make a determination as to whether the statement was voluntary. (Proposition VI). At the preliminary hearing, Appellant objected to the admission of his video-taped confession claiming lack of proper predicate showing he was properly advised under *Miranda* and that he had a clear understanding and voluntarily waived his rights. (Preliminary Hearing, p. 69, January 20, 1988). The State's response was that Officer Duncan testified to giving Appellant his *Miranda* warnings and that Appellant agreed to talk to him. (Preliminary Hearing, p. 69, January 20, 1988). The trial court responded:

"For the purpose of preliminary hearing, I agree that that's sufficient, and the objection is overruled."

There was no further objection from Appellant, and no specific request for a *Jackson v. Denno* hearing from Appellant, nor did the State or the court ask for such a hearing.

At trial, Appellant's objection was similar to the preliminary hearing. He never specifically requested a *Jackson v. Denno* hearing, stating instead:

MR. MILLER: I would object, briefly, to the introduction of the tape on the grounds that no proper predicate has been laid to show that the Defendant knowingly and willingly gave up his right to have a lawyer or any other of the rights under the Mi-

randa decision. And, also, at the same time, Judge, you want me to make my objections now to the use of that transcript or wait until—

THE COURT: I don't know....

MR. MILLER: Will you rule on my objections to the tape now?

THE COURT: Okay. On the admissibility and playing the tape?

MR.' MILLER: Yes.

THE COURT: I'll overrule that and allow it to be played.

Again, we find no specific request for a *Jackson v. Denno* hearing, from either of the parties, or the court. The fact that Appellant's objection was overruled at both preliminary hearing and trial is insufficient to take the place of the required *Jackson v. Denno* hearing and was error. Moreover, upon Appellant's counsel's failure to specifically request the hearing, it should have been requested by the State or ordered by the trial court to prevent error.

However, upon remand of Appellant's case for a new competency hearing, the trial court held a *Jackson v. Denno* hearing and found the Appellant knowingly and voluntarily made the statements contained on the tape, waived his rights, and that the waiver was proper and freely done. Any error which may have resulted was subsequently cured, and no reversal is warranted.

■ In Proposition VIII, Appellant alleges the introduction of certain evidence, specifically his video-taped confession, repetition of descriptions of bodies and other crime scene evidence, and testimony from family and friends of the victims, constitutes reversible error. Over his objection, the Appellant's video-taped confession was admitted into evidence and the jury was allowed to view it during deliberations. His first contention is that unrestricted use of the video-tape in the jury room was improper pursuant to 22 O.S.1981, § 894, and our decision in *Martin v. State*, 747 P.2d 316 (Okl.Cr.1987). Appellant's reliance on Section 894 is misplaced in that it delineates the procedure to be used in the event there is a disagreement between jurors as to any part of the testimony given at trial or if they want to be in-

formed on a point of law arising in the trial. Likewise, *Martin* addressed the issue of whether videotaped *testimony* of a child victim could be taken into the jury room for viewing.

We distinguished between the taped testimony of a witness and the recording of a witness' conversation in *Duvall v. State*, 780 P.2d 1178 (Okl.Cr.1989). In *Duvall*, we found that the recording of a conversation between the defendant and an informant during a sale of cocaine was not testimony, and left the decision to allow a jury to take exhibits with them to the jury room within the discretion of the trial court. In *Pfaff v. State*, 830 P.2d 193 (Okl.Cr.1992), the defendant claimed it was error for the trial court to allow the jury to view a video tape of the defendant cultivating marijuana plants after they had begun deliberating. We determined the trial court can permit the jury to have the tape during its deliberations as with any other exhibit furnished to the jury. Appellant's confession was admitted as an exhibit at trial. There was no error in allowing the jury to take the tape to the jury room during deliberations.

Appellant's argument at Proposition VIII concerning the introduction of photos and alleged repetitious testimony concerning the victims' bodies is rendered moot by the reversal of his murder convictions.

■■■■ Appellant cites to the record alleging the prosecutor took it upon himself to compare the terms "beyond a reasonable doubt" and "beyond any doubt", in contravention of this Court's decisions in *Williams v. State*, 658 P.2d 499, 500 (Okl.Cr.1983) and *Fellows v. State*, 508 P.2d 1089, 1090 (Okl.Cr.1973). Once again, Appellant failed to object to the statement at trial and therefore did not properly preserve it for review by this Court. A review for fundamental error shows none.

Specifically, in *Williams* we determined that numerous instances of prosecutorial misconduct required reversal, one of which was the State's attempt during voir dire to define the term reasonable doubt. In *Fellows* the error hinged upon the trial court's attempt to define reasonable doubt. That is not the case before this Court. In this instance, the State's comment was that while its burden

was to prove Appellant's guilt beyond a reasonable doubt, there was sufficient proof submitted to prove his guilt beyond any doubt.

■■■■ Appellant next alleges ineffective assistance of counsel claiming his trial counsel committed error by referring to him as a "thug" during closing argument, and failed to call any mitigating witnesses during the second stage of the trial. (Proposition IX). Appellant also alleges counsel spent an insufficient amount of time on the case (approximately 11.5 hours), allowed the jury to receive inappropriate instructions, failed to sufficiently investigate Appellant's background to determine if there were mitigating circumstances, and failed to object to inadmissible evidence.

Our review of an ineffective assistance of counsel claim must begin with a presumption of competence, and the burden is on the defendant to demonstrate *both* a deficient performance and resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Blake v. State*, 765 P.2d 1224 (Okl.Cr.1988). If we can dispose of the claim on the ground of lack of prejudice, this Court need not determine whether trial counsel's performance was deficient. *Strickland* at 466 U.S. 668, 697, 104 S.Ct. 2052, 2069–70, *Blake* at 1125–26.

The first question here is whether Appellant's sentence would have been different but for counsel's failure to present mitigating evidence during the second stage. Appellant does not allege that any mitigating evidence exists or that it could have been presented. We have previously determined that failure to present mitigating evidence is not, per se, a denial of effective assistance of counsel. *See Fisher v. State*, 736 P.2d 1003, 1014 (Okl.Cr.1987) (evidence and argument); *Coleman v. State*, 693 P.2d 4, 7 (Okl.Cr.1984) (evidence); and *Moore v. State*, 736 P.2d 161, 167 (Okl.Cr.1987) *cert. denied*, 484 U.S. 873, 108 S.Ct. 212, 98 L.Ed.2d 163 (1987) (argument).

Furthermore, Appellant's defense was that he did not participate in the actual burning of the victims, and although he may have been "stupid" and "dumb" that did not make him guilty of murder. We cannot say that the

reference to Appellant as a "thug" during defense counsel's closing argument was not a continuation of the trial strategy characterizing Appellant as something other than a "slick-minded professional criminal". Given Appellant's video-taped confession, the nature of the crimes, and the overwhelming evidence of his guilt, Appellant has failed to demonstrate, absent the errors he claims occurred, that the jury would have returned a different verdict or recommended a lesser punishment.

## SECOND STAGE PROCEEDINGS

■ We need not address Appellant's allegations concerning second stage errors because his murder convictions have been reversed and we require that the case be remanded back to the trial court for a new trial.

LUMPKIN, P.J., and JOHNSON, V.P.J., concur in part/dissent in part.

CHAPEL, J., specially concurs.

STRUBHAR, J., concurs.

LUMPKIN, Presiding Judge, concurring in part/dissenting in part.

I concur in the affirmance of the convictions for Kidnapping, Robbery with Firearms, Larceny of an Automobile and Arson. However, I disagree with the reversal of the murder convictions. I find that *Munson v. State*, 758 P.2d 324 (Okl.Cr.1988) does apply to this case and under that decision, Appellant was provided the same notice as *Munson* that a verdict of felony murder could be returned by the jury. *Munson* represents only a procedural change in the law. Therefore, under *Salazar v. State*, 852 P.2d 729, 737 (Okl.Cr.1993) and *Hain v. State*, 852 P.2d 744, 753 (Okl.Cr.1993) it can be applied to cases tried prior to its enactment. Further, *Munson* was applied in the co-defendant's case, *Hain v. State*, 852 P.2d at 752, to resolve a question of dismissal of the underlying felony supporting the convictions of

felony-murder. The record in *Hain* also reveals the felony-murder instruction was given based on the joint informations filed as to both Hain and Lambert acting as co-defendants, i.e. the defendants were jointly charged only with malice aforethought murder without an alternative felony murder information being filed. If the rule in *Munson* applied to the defendants in *Munson* and *Hain*, then, as a rule of law, it should equally apply to the Appellant in this case. I strongly dissent to the Court's decision to reverse the convictions for Murder, First Degree, in Counts I and II and remand for a new trial.

JOHNSON, Vice Presiding Judge, concurring in part/dissenting in part.

I would dissent from the majority herein for the reason as propounded in the State's brief. I would agree that this Court's previous holding in *Munson v. State*, 758 P.2d 324 (Okl.Cr.1988) is controlling. The court's holding was that the information is sufficient if it contains the element of the offense charged and which he must defend. In this case, the elements of the crime were contained in the information that would reasonably inform the defendant of a possibility of a felony murder. The defendant was not misled. Therefore, I would affirm the sentence of guilt but would concur in the reversal as it relates to second stage.

CHAPEL, Judge, specially concurring:

Our reversal today is not based on a "technicality", nor is this reversal based upon a desire by the judges of this Court to let a "guilty person go free." The reason we are compelled to reverse is very simple: Lambert was convicted and sentenced to die for a crime he was never charged with.[1] No court can allow such a conviction to stand. Every person has the right to know what crime they are charged with, and to be able to defend themselves against that crime. The Constitution does not permit, and we cannot allow, anyone to be convicted for a crime they do not know they are accused of.

---

1. Where the charge is malice murder and the jury is instructed on felony murder as well, if the jury returns a general verdict of guilty, there is no way to tell which alternative the jury used in determining guilt. Thus this Court must assume that Lambert's conviction was for felony murder. *Tibbs v. State*, 819 P.2d 1372 (Okl.Cr.1992); *James v. State*, 637 P.2d 862 (Okl.Cr.1981).

Malice aforethought murder and felony murder are completely separate crimes under Oklahoma statutes.[2] They may be, and routinely are, charged together as alternative versions of Murder in the First Degree. However, the proof required for each crime is different. When a defendant is accused of malice aforethought murder, the State must prove that he intended to murder his victim. To prove felony murder, the State need only show that the defendant committed one of several particular felonies against the victim and death resulted. Felony murder can be proved in a variety of ways, including testimony that the defendant committed the felony charged.

Here, Lambert was charged only with malice aforethought murder. The District Attorney, Lantz McLain, had the opportunity to charge Lambert in the alternative with felony murder as well, but chose not to do that. Lambert thus prepared to defend against a charge of malice murder, and his defense was that he did not intend to kill the victims. To convince the jury, he took the stand and admitted committing the robbery and kidnappings, each of which could support a felony murder charge, but denied any intent to kill either of the two victims. This testimony made sense against a charge of malice murder, but amounted to a form of suicide when the jury was later instructed that they could convict on a felony murder theory. In the most literal sense, by admitting the robbery and kidnapping, Lambert convicted himself of felony murder when he had not been charged with that crime, did not know he needed to defend himself against that crime, and did not know he could be convicted of it.

Neither our decisions in *Munson v. State* [3] nor *Hain v. State* [4] control here. *Munson* clearly says that a defendant may be tried for felony murder if he is on notice of the underlying felony unless he shows that he was misled by the charging Information.[5] Lambert was clearly misled by the decision to charge only malice murder, coupled with the District Attorney's refusal to charge him with felony murder in the alternative, since Lambert relied on those decisions when he chose what became a disastrous defense strategy. Lambert's co-defendant Hain was also charged with malice murder and his jury also was subsequently instructed on the felony murder alternative. However, we did not reach this problem in that case because Hain never testified, so he was not prejudiced by the irregular charging of offenses. *Munson* does not give the State the ability to trick a defendant into confessing, in open court and under oath, to a crime for which he will be subsequently convicted but with which he was never charged.

This problem could have been avoided if the District Attorney had charged Lambert with both malice aforethought and felony murder alternatives, a course of action which we have approved and which is routinely followed by prosecutors in this state.[6] No reasonable excuse exists for this failure. As it is, this Court must reverse the conviction so Lambert may be properly tried only for a crime he is charged with, an elementary principle required by the Constitution and demanded by fundamental fairness.

---

**2.** 21 O.S.1991, §§ 701.7(A), 701.7(B).

**3.** *Munson v. State*, 758 P.2d 324 (Okl.Cr.1988), *cert. denied*, 488 U.S. 1019, 109 S.Ct. 820, 102 L.Ed.2d 809 (1989).

**4.** *Hain v. State*, 852 P.2d 744 (Okl.Cr.1993), *cert. denied*, ─── U.S. ───, 114 S.Ct. 1402, 128 L.Ed.2d 75 (1994).

**5.** *Munson*, 758 P.2d at 332.

**6.** It should be noted that this is the second death penalty case we have recently had to reverse involving this District Attorney's inability to properly charge crimes. See *Pickens v. State*, 885 P.2d 678 (Okl.Cr.1994).